# Richmond.

## E. N. NIKIS v. COMMONWEALTH.

January 14, 1926.

1. LICENSE—*Fine for Conducting a Retail Merchandise Business Without a License—Business Situated on Land Purchased by United States to be Used as the Approach to a Bridge—Case at Bar.*—In the instant case accused was found guilty of conducting a retail merchandise business without first obtaining a license. It was shown that accused conducted his business on land which was purchased by the United States government, with consent of the State, to be used for an approach to a bridge. The accused denied his liability for the license tax upon the ground that the Commonwealth had no jurisdiction of the premises. The State, in granting its consent to the purchase, retained concurrent jurisdiction with the United States over such land.

   *Held:* That the judgment finding accused guilty should be affirmed.

2. TAXATION—*Land Owned by the United States—Property Upon Such Lands.*—The right of a State to tax the property of others located upon land owned by the United States, although it cannot tax such lands, will not be held to be abandoned by the State, except for the most compelling reasons.

3. LICENSE—*Exceptions—Land Owned by United States—Whether Bridge a Building within Constitution of United States Article One, Section Eight, Clause Seventeen.*—A bridge is not a "building" and an approach to a bridge which is a public highway is not a "building" as that term is used in the Constitution of United States, article one, section eight, clause seventeen, providing for the exclusive jurisdiction of the United States over places purchased by the United States with the consent of the legislature, for the erection of "forts, magazines, arsenals, dockyards and other needful buildings."

4. TAXATION—*Exemption—Lands of the United States—Property and Business on Such Land.*—In order to be accorded immunity from State taxation, a person conducting a retail merchandise business on land purchased by the United States, with the consent of the State, must not only show the land was acquired by the United States, but also that it was acquired for one or more of the purposes in article one, section eight, clause seventeen of the United States Constitution. The test is not whether the land was acquired by the United States

in the manner referred to in the Constitution of the United States, article one, section eight, clause seventeen, but the land must also be acquired for one of the specific purposes which are there indicated, namely for a fort, magazine, arsenal, dockyard or other needful buildings.

5. LICENSE—*Exceptions—Business Constructed on Land Owned by the United States—Case at Bar.*—Where the State appeared to have ceded no right or jurisdiction as to land purchased by the United States for a bridge approach except such as are inconsistent with ownership of the property by the United States, the imposition of the merchant's license tax on a retail business conducted on the land was entirely consistent with the Federal right and power.

Error to a judgment of the Circuit Court of Arlington county.

*Affirmed.*

The opinion states the case.

*Ball & Douglas*, for the plaintiff in error.

*John R. Saunders*, Attorney General, *Leon M. Bazile*, and *Lewis H. Machen*, Assistant Attorneys General, and *E. Warren Wall*, for the Commonwealth.

PRENTIS, P., delivered the opinion of the court.

E. N. Nikis has been found guilty of conducting a retail merchandise business without having first obtained a license therefor, in accordance with the requirements of the Virginia statute, and fined $30 and the costs of the prosecution.

[1] It is shown that he conducted a mercantile business in the station of the Washington-Virginia Railway Company at the south end of the Francis S. Key Bridge, in Arlington county, Virginia. This station is located on land which was purchased by the United States government, with the consent of the State of Virginia, to be used for an approach to the

bridge. The accused denies his liability for the license tax upon the ground that the Commonwealth of Virginia has no jurisdiction of the premises. The contention is that the United States government has the right of exclusive legislation there, under the United States Constitution, Article 1, section 8, clause 17, and that, so having exclusive legislative authority, the State has no jurisdiction, and its laws for the imposition of taxes are inoperative there.

The clause of the Federal Constitution cited reads: "Congress shall have power to exercise exclusive legislation in all cases whatsoever over such district (not exceeding ten miles square) as may by cession of the particular State and the acceptance of Congress become the seat of the government of the United States, and to exercise like authority over all places purchased by consent of the legislature of the State in which the same shall be for the erection of forts, magazines, arsenals, dockyards and other needful buildings."

The State of Virginia has given its consent to such purchase by an act approved March 6, 1886 (Acts 1885-86, c. 424), which reads thus:

"1. Be it enacted by the General Assembly of Virginia, That the consent of this State be, and is hereby, given to the purchase or acquisition, by gift or concession of the owners, by the government of the United States, or under the authority of the same, of land in the county of Alexandria, necessary for the abutment and approaches of the proposed bridge across the Potomac river, anywhere in the county of Alexandria, not exceeding ten acres, and to the building of such abutment and approaches upon the land that may be so acquired, and to the exercise of such jurisdiction by the United States over the same as may be necessary. But this consent is given subject to the following terms and conditions, to-wit:

"First. That this State retains concurrent jurisdiction with the United States over such land, so that the courts, magistrates and officers of this State may take such cognizance, execute such process, and discharge such other legal functions within the same as may not be incompatible with the consent hereby given.

"Second. That if the purpose of this grant should cease, or there should be, for five years consecutively, a failure on the part of the United States to use said land for said purpose, then the jurisdiction hereby ceded shall cease and determine, and the same shall revert to the Commonwealth of Virginia.

"2. The land acquired, and the abutments and approaches built for the purposes aforesaid, shall be exempt from taxation by this State, or by the constituted authorities of the county of Alexandria; but this exemption shall continue only so long as the United States shall continue to be the owners of the land and the erections thereon.

"3. This act shall be in force from its passage."

Two Virginia cases appear to be relied upon to support this contention. *Foley* v. *Shriver*, 81 Va. 568, is one. While there may be expressions there which appear to justify such reliance, the case presents quite a different question from that here presented. The object of that suit was to recover a debt from a nonresident defendant, and to garnishee funds belonging to him which were held by the "National Home for Disabled Voluntary Soldiers," and the process was served on the secretary of that corporation. It appears that the garnishee, the National Home for Disabled Voluntary Soldiers, was indebted to the defendant, that it was a corporation created by the Congress of the United States and was supported by

appropriations made by Congress. It was held that the State court had no jurisdiction over the garnishee. There it appeared from the act of cession (Acts 1869-70, p. 479) that the board of managers of the National Asylum for Disabled Soldiers desired to locate a branch of such asylum within this State, and that the necessary expenditures could be made for buildings and for the improvements only on property under the control of the national government. The consent of the legislature was given and the act expressly provided that such jurisdiction was ceded to the United States over this land, as is within the contemplation of the 17th clause of the 8th section of the first article of the United States Constitution; and the State reserved concurrent jurisdiction with the United States for the execution of process, etc., as might not be incompatible with the consent thereby given. So that reference to that act of cession shows that it was intended expressly to confer upon the Federal government the exclusive jurisdiction provided for by that clause—that is, exclusive legislative power corresponding with that exercised over the District of Columbia, and authority like that which is exercised over land acquired by the United States for the erection of forts, magazines, arsenals, dockyards and other needful buildings, as expressed in the clause.

A similar question arose in Ohio. There the act of the State (act April 13, 1867 [64 Ohio Laws, p. 149] ) ceding to the United States its jurisdiction over lands for the purpose of a National Asylum for Disabled Volunteer Soldiers, contained a proviso to this effect: "That nothing in this act shall be construed to prevent the officers, employees, and inmates of said asylum who are qualified voters of this State from exercising the right of suffrage at all township, county, and State

elections, in the township in which the said national asylum shall be located." It was held that upon a purchase of the territory, with the consent of the State, the United States became vested with exclusive jurisdiction over it and its appurtenances in all cases whatsoever; and that the inmates of such asylum resident within the territory, being within such exclusive jurisdiction, were not residents of the State of Ohio so as to entitle them to vote, within the meaning of the State Constitution, which conferred the elective franchise upon its residents alone. *Sinks* v. *Reese*, 19 Ohio St. 306, 2 Am. Rep. 397.

The other Virginia case relied upon is *Bank of Phoebus* v. *Byrum*, 110 Va. 708, 67 S. E. 349, 27 L. R. A. (N. S.) 436, 135 Am. St. Rep. 953. In that case the plaintiff sought, by attachment, to subject money belonging to the defendant, Byrum, deposited in a local bank, upon the ground that the defendant was not a resident of the State of Virginia. Byrum was then an enlisted solider in the army of the United States, at Fortress Monroe. It was held that the attachment could be maintained, and that Byrum, who had been domiciled in another State and came to Fortress Monroe for the purpose of enlisting, having enlisted in the army, did not thereby acquire a residence in this Commonwealth so as to defeat the right of a creditor to issue an attachment against him as a nonresident.

The question here at issue, however, is whether the land in Arlington county, purchased for an approach to the Key bridge, by the United States with the consent of the State of Virginia, is land over which the Congress has exclusive legislative jurisdiction, just as it has over the District of Columbia and over lands purchased by consent of the State for the erection of

forts, magazines, arsenals, dockyards and other needful buildings. If it can be so held, then Congress having the exclusive legislative power, the State of Virginia has no jurisdiction and cannot impose a fine upon the accused for refusing to pay a State license tax for transacting business in that territory.

In *Railroad Company* v. *Lowe*, 114 U. S. 525, 5 Sup. Ct. 995, 29 L. Ed. 264, and *Chicago, Rock Island, &c. R. Co.* v. *McGlinn*, 114 U. S. 542, 29 L. Ed. 270, 5 Sup. Ct. 1005, the constitutional provision cited and relied upon is strictly construed, and it is held that the word "purchase" as used in the clause of the Constitution under consideration, has not the general technical meaning attached to it at common law as including any acquisition of lands by some other way than such actual purchase; and that if the United States acquires land by direct cession from a State of its own land (as distinguished from a purchase by consent), it may be upon such conditions as the State may determine to impose, not inconsistent with the free and effective use of such land for the purposes intended. Applying this construction, the State of Kansas having ceded a part of its territory for the Fort Leavenworth military reservation, and having in the conveyance retained "the right to tax railroad, bridge and other corporations, their franchises and property, on said reservation," such retention of this power to tax was upheld.

[2] That the right of a State to tax the property of others located upon lands owned by the United States, although it cannot tax such lands, will not be held to be abandoned by the State, except for the most compelling reasons, is quite manifest from several decisions of the Supreme Court of the United States.

In *Thompson* v. *Union Pacific R. Co.*, 9 Wall. 579,

19 L. Ed. 793, it was held that the Union Pacific Railroad Company, Eastern Division, incorporated by the Territory of Kansas, authorized to construct a railroad under the direction and authority of Congress for the use and purposes of the United States, is not exempt from taxation by the State in the absence of any legislation by Congress to that effect. In this connection, Chief Justice Chase said: "We perceive no limits to the principle of exemption which the complainants seek to establish. It would remove from the reach of State taxation all the property of every agent of the government. Every corporation engaged in the transportation of mails, or of government property of any description, by land or water, or in supplying materials for the use of the government, or in performing any service of whatever kind, might claim the benefit of the exemption. The amount of property now held by such corporations, and having relations more or less direct to the National government and its service is very great. And this amount is continually increasing; so that it may admit of question whether the whole income of the property which will remain liable to State taxation, if the principle contended for is admitted and applied in its fullest extent, may not ultimately be found inadequate to the support of the State governments."

In *Union Pacific R. Co.* v. *Peniston,* 18 Wall. 5, 21 L. Ed. 787, it is held that the Union Pacific Railroad Company, although created by Congress as an agent of the Federal government, designed to be employed, and actually employed in the legitimate service of the government, both military and postal, is not exempt from taxation by the State of Nebraska; that the taxing power of a State is one of its attributes of sovereignty; it exists independently of the Con-

stitution of the United States, and may be exercised to an unlimited extent, except in so far as it has been surrendered to the Federal Government; and that there are no constitutional implications which prohibit a State tax upon the property of an agent of the government, merely because it is the property of such agent. The distinction between taxing the agencies of the Federal government and taxing the property of such agents is thus indicated: "It is, therefore, manifest that exemption of federal agencies from State taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of Federal powers."

A more recent case is *Baltimore Shipbuilding, &c., Co. v. Baltimore,* 195 U. S. 375, 25 S. Ct. 50, 49 L. Ed. 242. There land which was conveyed by the United States to a corporation for dry dock purposes is held not entirely exempt from State taxation as an agency of the United States by reason of the fact that there was a reservation in the conveyance of the right to the free use of the dry dock, and a provision therein for forfeiture in case of the continued unfitness of the dry dock for use, or the use of the land for other purposes. Mr. Justice Holmes concludes the opinion there with this language: "Furthermore, it seems to us extravagant to say that an independent private corporation for gain, created by a State, is exempt from

State taxation, either in its corporate person or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time."

In *Thomas* v. *Gay*, 169 U. S. 264, 18 S. Ct. 340, 42 L. Ed. 740, and *Wagoner* v. *Evans*, 170 U. S. 588, 18 S. Ct. 730, 42 L. Ed. 1155, the taxation of cattle, although kept for grazing purposes upon an Indian reservation in Oklahoma, the land being exempt from State taxation, does not violate any right or invade the jurisdiction and control of the United States over the Indians and their lands.

In *Crook, Horner & Co.* v. *Old Point Comfort Hotel Co.*, 54 Fed. 604, the question was whether a mechanic's lien could be enforced against the Chamberlin Hotel at Old Point Comfort, located upon the government reservation there. It appearing that the Virginia statute invoked did not conflict with any law of the United States relating to forts, and did not interfere with the military control, discipline and use by the United States of Fortress Monroe as a military post, the liens were enforced and it was held that the general laws of Virginia, other than criminal, are in force at Old Point Comfort, and are especially in force in those parts and places at Old Point Comfort which have been appropriated to other than the military purposes of the United States.

It appears from the records of the District Court of the United States for the Eastern District of Virginia, Alexandria division, that on July 21, 1923, in the case of *Burke* v. *The Texas Company*, the learned judge, Hon. D. Lawrence Groner, held that the tax imposed by the State upon gasoline used as motor fuel had been lawfully collected of Burke, who had a gasoline pump upon the land owned by the United States in

the county of Arlington, Virginia, known as the United' States military road, extending from the south end of the United States highway bridge through the United. States experiment farm to the Arlington National Cemetery.

[3] That a bridge is not a building has been frequently decided, and it seems hardly necessary to say that an approach to a bridge which is a public highway is not a building.

[4] In order to be accorded immunity from State taxation, the accused must not only show that the land is acquired by the United States but also that it is for one or more of the purposes so clearly indicated in article 1, section 8, clause 17, of the Constitution. We are clear in our view that he is not entitled to any such immunity.

It is suggested in the brief for the accused that the sole test is whether or not the land has been acquired in the manner referred to in the clause cited—that is, over "places purchased by consent of the legis-lature of the State in which the same shall be." Clearly,. however, this is not the sole test, because it is manifest that the land must also be acquired for one of the specific purposes which are indicated in the clause, namely, for a fort, magazine, arsenal, dockyard, or other needful building.

While the land of the United States upon which the station building is located is exempt from taxation by the State of Virginia, because it is the property of the Federal government, neither the property of others. located thereon, nor the business of others conducted thereon for their private gain, can be held to be so exempt. · As to these others, the State statutes have full force and effect. That this is the generally accepted rule is well indicated by the cases which we have.

cited as well as by *Rice* v. *Hammond*, 19 Okl. 419, 91 P. 698, 14 Ann. Cas. 963, and note. The same rule is quite generally recognized, 26 R. C. L., sec. 75, p. 100.

[5] The State appears to have ceded no right or jurisdiction as to this land except such as are inconsistent with ownership of the property by the United States, and this imposition of a merchant's license tax is entirely consistent with the Federal right and power.

Our conclusion then is to affirm the judgment.

*Affirmed.*