92 P.2d 993

STATE v. MIMMS.

No. 4460.

Supreme Court of New Mexico.

Aug. 2, 1939.

Rehearing Denied Aug. 22, 1939.

W. A. Gillenwater, of Hot Springs, and J. B. Newell, of Las Cruces, for appellant.

Filo M. Sedillo, Atty. Gen., George Lougee, Asst. Atty. Gen., and William A. Watson, of Santa Fe, for the State.

ZINN, Justice.

J. G. (Glen) Mimms was found guilty of possessing beer and wine for purposes of sale without first obtaining a license as required by L.1937, Ch. 130, Art. IV, Sec. 401. He was sentenced to thirty days in jail and ordered to pay a fine of $50, and that sentence be suspended. From the judgment and sentence this appeal is prosecuted.

The facts revolving around this case were stipulated between the State and the appellant, and it was agreed that the trial court in determining the issues may consider such stipulated facts as proven.

From the stipulated facts it appears that Mimms first engaged in business at the Elephant Butte Dam on April 1, 1930, under a four-year exclusive contract with the Federal Bureau of Reclamation authorizing him to sell beer and wine and for other purposes. Upon expiration of that contract Mimms had yearly contracts for the same business. The contract subjected Mimms to Compliance with all Federal Laws.

On June 4, 1938, Mimms had beer and wine exposed for sale in the building occupied by him upon the land owned by the U. S. Government. On that date Mimms did not have the requisite licenses required by the State authorities for the sale of liquor under the laws of New Mexico. He had the Federal Stamp required by the U. S. Government for sale of all classes of liquors.

The appellant conducted his place of business upon land acquired by the United States Government, either by purchase or condemnation, for reclamation purposes, pursuant to U. S. Const., Art. I, Sec. 8, Subsec. 17, U.S.C.A., to which acquisition the State of New Mexico had given its consent by 1929 Comp.St., Sec. 146-101. The title to the land was vested in the U. S. Government.

The stipulation further recites that during the construction of the Elephant Butte Dam and the facilities at Elephant Butte by the government, the department (presumably the Reclamation Department) maintained schools and a jail at the Dam upon the property then and now owned by it; that a U. S. Deputy Marshal was constantly upon the project. That at the present time, however, no schools are maintained by the Federal Government, and children living on the Reservation go to schools of the state and county without cost, but transportation is cared for individually. All residents on government property qualified to vote, vote in all county and state elections. No U. S. Marshal is now maintained at the Dam and no jail is now in use there.

From the stipulation it also appears that the dam and all facilities, including the building occupied by defendant, were built by the government and not by contract with third parties, and that during the World War the U. S. Government maintained

guards for the dam and all property of the United States. This has not been done since the war. The highways within the exterior boundaries of the Reclamation Project are maintained by the Bureau of Reclamation exclusively. The Bureau of Reclamation operates and maintains a water and electric light supply to all buildings occupied by Mimms as well as all other houses and buildings on the project.

The Federal Government has established a wild life refuge over the entire property covered by the dam and lake extending to the exterior boundaries thereof.

The Bureau of Reclamation has just completed a new building to be used by Mimms for a restaurant, commissary, and lounge rooms. It has been equipped with fixtures for these various purposes by the Bureau of Reclamation at an estimated cost of $40,000. This building will be operated by Mimms under his contract just the same as the old building.

The Bureau of Reclamation exercises exclusive control of all boating facilities upon Elephant Butte Lake. Even the State Game Commission of New Mexico is required to pay the annual fee of $1.50 to keep its boat upon the lake, although all persons exercising the privilege of fishing in the Reservation are required by state law to have a license, and some persons apprehended in violation of this law have been prosecuted in the state courts.

Before pleading to the charge laid in the information, the appellant interposed his plea to the jurisdiction of the state court to try the cause. The plea to the jurisdiction was predicated upon the theory that inasmuch as appellant was engaged in business in a public building on land belonging to the United States, and inasmuch as the State of New Mexico had, by 1929 Comp. St., Sec. 146-102, ceded to the United States exclusive jurisdiction for all purposes over such lands, that therefore the state courts had no jurisdiction to try the accused.

Appellant also argues that in the absence of any showing that the United States has by some legislative enactment conferred concurrent jurisdiction upon the state, the presumption is that the "exclusive jurisdiction" conferred upon the Federal Government by Sec. 146-102 is controlling.

The plea to the jurisdiction was overruled, the appellant plead to the information and judgment and sentence followed as first related. There is only one question before us, a clear question of law, namely, whether the state court had jurisdiction.

The clause of the Federal Constitution cited, reads as follows:

"The Congress shall have Power * * To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Ar-

senals, Dock-Yards, and other needful buildings;—And

"To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

The consent given the Federal Government by our state to acquire the land reads as follows: "Consent to acquisition of land by. The consent of the state of New Mexico is hereby given, in accordance with the seventeenth clause, eighth section, of the first article of the constitution of the United States to the acquisition by the United States, by purchase, condemnation, or otherwise, of any land in this state required for sites for custom houses, court houses, post offices, arsenals, or other public buildings whatever, or for any other purposes of the government." Sec. 146-101, N.M. Stat.Ann.1929 Comp.

The statute which appellant claims grants exclusive jurisdiction to the Federal Government over lands so acquired reads as follows: "Jurisdiction over land acquired. Exclusive jurisdiction in and over any land so acquired by the United States shall be, and the same is hereby, ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts of this state; but the jurisdiction so ceded shall continue no longer than the United States shall own such lands." Sec. 146-102, N.M.Stat.Ann. 1929 Comp.

Similar questions have arisen in many jurisdictions. Some of the cases examined will be referred to hereafter. The majority of the cases examined deal with the power of the State to tax property located or situated on government reservations within the exterior boundaries of the state, and which property does not belong either to the U. S. or to tribal Indians, or which property is otherwise exempt from taxation.

In 46 A.L.R. at page 224, the annotator in reviewing the case of Nikis v. Virginia, 144 Va. 618, 131 S.E. 236, 46 A.L.R. 219, says: "While it is settled beyond question that a state has no power to tax the means and instrumentalities of the Federal government (see 26 R.C.L. 95, § 71), a state may, nevertheless, impose a personal property tax on property situated on government reservations within its limits, not belonging to the United States or to tribal Indians or otherwise exempt from taxation. 26 R.C.L. 100, § 75. The question presented by this annotation is whether a state may impose a license tax on the business of an individual being conducted on land owned by the Federal government. The reported case (Nikis v. Com. [144 Va. 618, 131 S.E. 236, 46 A.L.R.] 219) appears to be the only decision dealing with this power. In that case the court holds to be subject to a state license tax, a business carried on in a railroad station situated on land ceded to the Federal government for an approach to an interstate bridge. This decision is placed on the somewhat technical ground that a bridge approach is not a 'building' within article 1, § 8 of the Con-

stitution (10 Fed.Stat.Ann. 838, U.S.C.A.), giving the Federal government exclusive jurisdiction over lands ceded for 'forts, magazines, arsenals, dockyards, and other needful buildings.' Being outside this provision, the court points out that the only other available source of exemption, the act exempting property of the United States from taxation, is not applicable to property of an individual on land belonging to the United States. Related and analogous holdings and an unreported decision of the Federal district court are set out in the reported case."

The Virginia case reviews many of the decisions of the United States Supreme Court, and it is referred to here for that purpose. We do not necessarily cite the Virginia case as authority for the views we hereafter express.

Another recent case is that of Standard Oil Company of California v. Johnson, 10 Cal.2d 758, 76 P.2d 1184. In this case there was involved the right of the State of California to tax sales of gasoline in certain national parks located within the territorial limits of California. This right of the state to impose and collect the tax was sustained by the Supreme Court of California. The same conclusion was reached by the Supreme Court of California in the case of Yosemite Park & Curry Co. v. Johnson, 10 Cal.2d 770, 76 P.2d 1191, as to the right of the State of California to collect a tax on retail sales in Yosemite National Park.

In the Standard Oil Co. case, supra, the Supreme Court of California discusses and criticises the decision of the three-judge court which is found in the case of Yosemite Park & Curry Co. v. Collins, D.C., 20 F. Supp. 1009. We do not deem it necessary here to review the Federal case because from the decision of the three judge court a direct appeal was taken to the United States Supreme Court. A decision was handed down on May 31, 1938. Collins v. Yosemite Park & C. Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502. It is upon this decision of the United States Supreme Court that the appellant rests his case. Appellant also cites other recent decisions of the United States Supreme Court as supporting his claim of exemption, to-wit: James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318 and also the case of Silas Mason Co. v. Tax Co. of Washington, 302 U.S. 186–210, 58 S. Ct. 233, 82 L.Ed. 187, and Ryan v. State of Washington, 302 U.S. 186–210, 58 S.Ct. 233, 82 L.Ed. 187.

Appellee cites the Silas Mason and Ryan cases, contending that this case supports the State's view.

With the contention of appellant that he is not subject to the New Mexico liquor license law we cannot agree. In the United States Supreme Court case of Collins v. Yosemite Park & C. Co., in the opinion by Mr. Justice Reed, it will be noted that the State of California had ceded to the United States Government sole and exclusive jurisdiction over and within all of the territory included in the several tracts of land set aside and dedicated for *park purposes,* saving to the state only the

right to tax persons and corporations, their franchises and property on the lands included in said parks. In construing this reservation, the United States Supreme Court said [304 U.S. 518, 58 S.Ct. 1013, 82 L.Ed. 1502]:

"The States of the Union and the National Government may make mutually satisfactory arrangements as to jurisdiction of territory within their borders and thus in a most effective way, cooperatively adjust problems flowing from our dual system of government. Jurisdiction obtained by consent or cession may be qualified by agreement or through offer and acceptance or ratification. It is a matter of arrangement. These arrangements the courts will recognize and respect.

"The State urges the constitutional inability of the national government to accept exclusive jurisdiction of any land for purposes other than those specified in clause 17, section 8, Article 1 of the Constitution, U.S.C.A. [Const. art. 1, § 8, cl. 17]. This clause has not been strictly construed. This Court at this term has given full consideration to the constitutional power of the United States to acquire land under Clause 17 without taking exclusive jurisdiction. In that case, it was said: 'Clause 17 contains no express stipulation that the consent of the state must be without reservations. We think that such a stipulation should not be implied. We are unable to reconcile such an implication with the freedom of the state and its admitted authority to refuse or qualify cessions of jurisdiction when purchases have been made without consent, or property has been acquired by condemnation.' The clause is not the sole authority for the acquisition of jurisdiction. There is no question about the power of the United States to exercise jurisdiction secured by cession, though this is not provided for by clause 17. And it has been held that such a cession may be qualified. It has never been necessary, heretofore, for this Court to determine whether or not the United States has the constitutional right to exercise jurisdiction over territory, within the geographical limits of a State, acquired for purposes other than those specified in Clause 17. It was raised but not decided in Arlington Hotel Co. v. Fant, 278 U.S. 439, 454, 49 S.Ct. 227, 230, 73 L.Ed. 447, [451]. It was assumed without discussion in Yellowstone Park Transp. Co. v. Gallatin County [C.C.A. 9] 31 F.2d 644.

"On account of the regulatory phases of the Alcoholic Beverage Control Act of California, it is necessary to determine that question here. The United States has large bodies of public lands. These properties are used for forests, parks, ranges, wild life sanctuaries, flood control, and other purposes which are not covered by Clause 17. In Silas Mason Co. v. Tax Commission, 302 U.S. 186 [ante, 187], 58 S.Ct. 233, 82 L.Ed. 187, we upheld in accordance with the arrangements of the State and National Government the right of the United States to acquire private property for use in 'the reclamation of arid and semi-arid lands' (page 243) and to hold

its purchases subject to state jurisdiction. In other instances, it may be deemed important or desirable by the national government and the state government in which the particular property is located that exclusive jurisdiction be vested in the United States by cession or consent. No question is raised as to the authority to acquire land or provide for national parks. As the national government may, 'by virtue of its sovereignty' acquire lands within the borders of states by eminent domain and without their consent, the respective sovereignties should be in a position to adjust their jurisdictions. There is no constitutional objection to such an adjustment of rights. It follows that jurisdiction less than exclusive may be granted the United States. The jurisdiction over the Yosemite National Park is exclusively in the United States except as reserved to California, e. g., right to tax, by the Act of April 15, 1919, St.Cal.1919, p. 74. As there is no reservation of the right to control the sale or use of alcoholic beverages, such regulatory provisions as are found in the Act under consideration are unenforceable in the Park." Collins v. Yosemite Park & C. Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502, at pages 1509 and 1510.

Appellant argues that New Mexico failed to reserve the right to impose a license tax, and absent such a reservation the state cannot impose a license on Mimms. Such reservation in our statute was totally unnecessary.

█ Our statute is different from the California statute, in this. Sec. 146-101 gives consent to the acquisition by the United States Government of land necessary for the purposes therein enumerated. Sec. 146-102 grants exclusive jurisdiction in and over *the land* so acquired. Sec. 146-103 defines the nature of the exemption from taxation granted the United States, namely: "* * * and so long as the said lands shall remain the property of the United States when acquired as aforesaid, and no longer, the same shall be and continue exempt and exonerated from all state, county, and municipal taxation, assessment, or other charges which may be levied or imposed under the authority of this state."

True, the state cannot tax the land belonging to the United States, but the concession of the appellant to sell liquor on the land is not exonerated from taxation. When the Federal Government gave to appellant a concession to do business upon the Government's property, that business belonged to Mimms and not to the Government. The exemption from taxation goes only to the Government and not to its concessionaires.

█ We hold it to be a principle of law that the State's jurisdiction to tax and regulate the liquor industry within its boundaries will not be presumed to have been legislated away unless such concession can be clearly found in the express statute of concession. This we do not find.

█ As stated by the Supreme Court of Washington, and quoted with approval by the Supreme Court of California: "The

pertinent considerations are stated in Ryan v. State, supra, 188 Wash. 115, 61 P.2d 1276, at page 1283, as follows: 'But, since self-preservation is the first law of nations and states, as well as of individuals, it will not be presumed, in the absence of clearly expressed intent, that the state has relinquished its sovereignty. * * * The taxing power of the state is never presumed to have been relinquished unless the language in which the surrender is made is clear and unmistakable.' And the following is also pertinent: 'This is not a contest between the federal government and the state as to jurisdiction. It is a contest between the state, asserting its concurrent, or partial, jurisdiction, and an individual who asserts that exclusive jurisdiction rests in the federal government. So far from there being any contest as to jurisdiction between the two sovereign powers, the record discloses that they are working in harmony and accord, each exercising the field for which it is the better equipped and each, at the same time, recognizing the field of the other. The federal government, therefore, cannot possibly be prejudiced by the result of this action.'" Standard Oil Co. of California v. Johnson, 10 Cal.2d 758, 76 P.2d 1184, at page 1189.

In the brief of the appellee we find a letter from the Department of the Interior under date of Dec. 8, 1914, addressed to "The Reclamation Commission" and signed by "A. A. Jones, First Assistant Secretary." The authenticity of this document is not denied by appellant. This letter reflects the views of the Department of the Interior as to the jurisdiction acquired by it. That part of the letter material hereto reads as follows:

"In the opinion of this Department, the act of the State Legislature of June 10, 1912, supra, did not have the effect of ceding jurisdiction of the State's civil and criminal authority over the lands within the Rio Grande Reclamation Project to the United States. The said act, according to the express provisions of Section 1, is given in accordance with and under clause seventeen, section eight of article one of the constitution of the United States, which clause authorizes Congress to exercise exclusive jurisdiction over all places purchased by the consent of the Legislature of the state in which the same shall be, for the erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful buildings. Lands acquired by purchase or condemnation, and public lands reserved from entry, under the provisions of the Reclamation Act of June 17, 1902 (32 Stat. 388), and acts supplemental thereto, do not fall within the purview of the foregoing portion of the constitution or within the scope of the act of the Legislature of the State of New Mexico. Such lands are acquired or reserved by the United States in connection with the construction, operation, and maintenance of reclamation projects, the primary object of which is the reclamation of arid public lands, and the incident reclamation of private lands adjacent thereto, the law providing that when payments required therein for the major part of lands irrigat-

ed have been made, the management and operation of the works is to pass to the owners of the land irrigated, the title to and the management of the reservoirs and works for their protection to remain in the Government until otherwise provided by law. Under section 3 of the act, public lands required for irrigation works may be reserved from disposition, and private lands and rights necessary to be acquired are to be secured by the Secretary of the Interior by purchase or condemnation. It is clearly the intent and purpose of the act that these operations undertaken for the reclamation of arid lands, and for the benefit of the people, shall not be carried on in such way as to interfere with the laws of the state wherein the same were located. On the contrary there is nothing to support the view that it was the intention to interfere with the jurisdiction of the State in this particular. I am, therefore, clearly of the opinion that the State of New Mexico still has full jurisdiction over lands within the limits of that State, reserved or acquired and used in connection with the Rio Grande Reclamation Project.

"You will communicate the views expressed herein to the proper state authorities, to the end that they may assume jurisdiction and provide the proper machinery for carrying into effect the laws of the State within the territory described.

"Very respectfully,

"[signed] A. A. Jones
"First Assistant Secretary"

We set forth the above letter only to show that the United States Government, acting through its proper officers, never contended for exclusive jurisdiction, and the right to make such claim by its concessionaire is without merit.

In the case of Ryan v. State Tax Comm., 188 Wash. 115, 61 P.2d 1276, 1283, the Supreme Court of Washington said: "* * * if the state were excluded from all jurisdiction, the residents of the project would be without school facilities, police protection, and the right to vote, the workmen would be deprived of the benefit of industrial insurance, and the rules for sanitation would be suspended; for, if the state be wholly without jurisdiction, then it must follow that the state may not extend its privileges to the residents of the project nor expend its money in their behalf. * * * The facts, taken as a whole, argue conclusively, in our opinion, that the state never intended to cede, and the United States never intended to take, exclusive jurisdiction over the project. Facts consistent with the retention, and inconsistent with cession, of exclusive jurisdiction by the state should, in the absence of any assertion by the federal government to the contrary, be construed most strongly in favor of the state, to the end that its territory be not diminished and that its jurisdiction in matters in which the federal government is not directly or immediately concerned be not entirely lost."

The United States Supreme Court, speaking through Chief Justice Hughes, in

affirming this decision, Silas Mason Co. v. Tax Com. of the State of Washington, supra—Ryan v. State Tax. Comm., supra, said: "The acquisition by the United States of title to lands within the boundaries of a state is not sufficient to exclude the state from exercising any legislative authority, including its taxing and police power, in relation to the property and activities of individuals and corporations within the territory, but it must appear that the state, by consent or cession, has transferred to the United States that residuum of jurisdiction which otherwise it would be free to exercise."

We can add many reasons to those given by the Supreme Court of Washington why the United States Government did not accept, nor did the State of New Mexico cede, exclusive jurisdiction over the land acquired for all purposes. It is sufficient to say that the acts of cession, Secs. 146-101 to 146-103, inc., do not indicate any such exclusive concession as claimed by appellant. The State of New Mexico never ceded its right to regulate or tax the liquor traffic within the State of New Mexico upon lands acquired by the United States Government for Reclamation purposes.

So holding, we find no error in the judgment and sentence of the trial court, and the same is hereby affirmed.

It is so ordered.

BICKLEY, C. J., and BRICE, SADLER, and MABRY, JJ., concur.