201 P.2d 782

### CHANEY v. CHANEY.
### No. 5145.

Supreme Court of New Mexico.

Jan. 6, 1949.

O. Russell Jones, and M. P. Gutierrez, both of Santa Fe, for appellant.

Robert W. Ward, of Lovington, amicus curiae.

LUJAN, Justice.

Sibyl H. Chaney filed her complaint in the District Court of Santa Fe County against Marion A. Chaney, seeking an absolute divorce from him. She alleged, among other things, that she and the defendant were married at the City of Brownwood, Brown County, State of Texas, on or about December 1, 1940, and that she is and has been a bona fide resident, in good faith, of the County of Sandoval and State of New Mexico, for more than one year next preceding the filing of her complaint. The defendant entered his voluntary appearance, waived any and all questions relating to venue and consented that the cause be tried in his absence without further notice to him.

The acquisition of the land comprising the Los Alamos Project by the United States is related in detail in the case of Arledge v. Mabry, 52 N.M. 303, 197 P.2d 884; therefore, we will not repeat it here.

It is not denied that the appellant has continuously lived in Los Alamos, a governmental project, since January 15, 1947, nor that the portion thereof upon which plaintiff resides was procured through condemnation proceedings, and that the Los Alamos Project is situated within the boundaries of Sandoval and Santa Fe Counties, New Mexico.

The appellant, plaintiff below, first came to the State of New Mexico, with her husband on December 15, 1946, from the State of Texas. They lived in a trailer house in Albuquerque for about three days, then moved the trailer house to Santa Fe where they lived for a month. On January 15, 1947, they moved to Los Alamos where they lived in the trailer house until March 28, 1948, when she moved into one of the permanent houses located on the condemned land of the project and where she lived at the time she filed this action.

At the time the Los Alamos Project was created, many people were employed to work there by the Los Alamos Atomic Energy Commission and private concerns, some of the employees were, and others of whom were not, at the time of their employment, residents of New Mexico. The appellant and her husband were legal residents of the State of Texas at the time they were employed and when they moved into Los Alamos.

At the conclusion of plaintiff's evidence, the district court refused to grant her a divorce because the jurisdictional residence relied upon by her was on condemned land belonging to the United States at the time she instituted her suit and, in the court's opinion, residence thereon was not sufficient to give the court jurisdiction. Thus, the sole question before us is whether persons living at Los Alamos, on land acquired through condemnation by the United States, are residents of New Mexico, for purposes of maintaining a divorce suit.

■■■ The Constitution of the United States, Art. 1, Sec. 8, Clause 17, provides that Congress shall have power "to exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten miles square) as may, by cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings". In discussing this Clause of the Constitution, Mr. Justice Sadler, speaking for the Court, in Arledge v. Mabry, supra [52 N.Mex. 303, 197 P.2d 889], said:

"The New Mexico statute whereby consent was given to the United States to acquire any land in New Mexico under the clause of the federal constitution quoted above for sites for arsenals and other purposes was enacted in 1912 as L. 1912, c. 47. * * *

"Although the United States constitution, in the clause quoted, mentions acquisition by purchase, it has long been settled that the same consequences attach from a jurisdictional standpoint where land is acquired through *condemnation* proceedings. Indeed, land so acquired is deemed to have been secured by purchase and the same consequences attach. * * * Furthermore, the term 'exclusive legislation' employed in said Clause 17 of the federal constitution is held to be synonymous with and to carry the same meaning as if the term 'exclusive jurisdiction' had been employed. * * *" (Emphasis ours.)

The United States having acquired the land in question through condemnation proceedings, it thus obtained exclusive jurisdiction over the same, except to serve therein civil and criminal process of the courts of this State as to offenses and transactions originating outside the condemned area, and such land is not deemed a part of the State of New Mexico. Accordingly, persons living thereon do not thereby acquire legal residence in New Mexico. Arledge v. Mabry, supra.

In Lowe v. Lowe, 150 Md. 592, 133 A. 729, 733, 46 A.L.R. 983, the majority opinion said:

"The great weight of authority is to the effect that lands acquired in accordance with the provisions of the federal Constitution cease to be a part of the state, and become federal territory, over which the federal government has complete and exclusive jurisdiction and power of legislation. It is therefore clear that persons residing upon the government reservation at Perry Point are not residents of the state of Maryland for the purpose of exercising the right of franchise * * * for the reason that they reside upon territory belonging to the United States and not the state of Maryland; and in our opinion, for the same reason, *they are not such residents of the state as would entitle them to file a bill for divorce in any of the courts of the state.* It might be said that it is an unfortunate situation, where, by reason of the fact that the federal government has failed to make provision for such cases, residents upon such reservations are left without any remedy; but this is a condition wherein the only relief which can be given is by the federal Congress."

We are not unmindful that in Tenorio v. Tenorio, 44 N.M. 89, 98 P.2d 838, in discussing the case of Lowe v. Lowe, supra, we used language intimating some favor for the persuasive reasoning of Chief Justice Bond in his dissenting opinion in that case. We were holding in Tenorio v. Tenorio, supra, that one living on Pueblo Indian lands, territorially within New Mexico, could meet the statutory residential requirement for maintaining a divorce suit in the courts of this state. However, in that very case, as later in the case of Arledge v. Mabry, supra, we called attention to the fact that there was a difference in the status

of Pueblo Indian lands and property acquired by the United States in the constitutional method when considered in relation to a question of "residence" for purposes of a divorce action, adding in the Arledge opinion for purpose of clarifying our views, the following:

"The seemingly tentative approval, provisional though it be, given the dissenting views of Chief Justice Bond in Lowe v. Lowe, supra, referred to in the quotation next above is, of course, to be qualified by what we today say and hold in the case before us."

The right to apply for or obtain a divorce is not a natural one, but is accorded only by reason of statute, and the state has a right to determine who are entitled to use its courts for that purpose and upon what conditions they may do so. See Allen v. Allen, 52 N.M. 174, 194 P.2d 270. Section 25-704, 1941 Comp., under which this action was brought, provides: "The plaintiff in action for the dissolution of the bonds of matrimony must have been an actual resident, in good faith, of the state for one (1) year next preceding the filing of his or her complaint * * *."

We are of the opinion, and so hold, that residence on the condemned area of the Los Alamos Project does not suffice to supply the residence required by the foregoing section of the divorce statutes. It follows that the judgment of the district court is correct and should be affirmed.

It is so ordered.

BRICE, C. J., and SADLER, McGHEE, and COMPTON, JJ., concur.