454 P.2d 269

Commander Frank H. LANGDON, Lucylle C. Langdon, Lawrence W. Walsh and Colonel William P. Carter, Plaintiffs-Appellees,

v.

Lucy JARAMILLO, Bernalillo County Clerk, Defendant-Appellant.

No. 8768.

Supreme Court of New Mexico.

May 12, 1969.

Alexander Sceresse, Dist. Atty., Robert N. Singer, William J. Bingham, Albuquerque, for appellant.

Modrall, Seymour, Sperling, Roehl & Harris, Frank H. Allen, Jr., Sutin, Thayer & Browne, Robert J. Werner, Albuquerque, for appellees.

James A. Maloney, Atty. Gen., Gáry O. O'Dowd, Deputy Atty. Gen., Santa Fe, amicus curiae.

## OPINION

TACKETT, Justice.

This case comes before us as a result of an appeal by defendant-appellant Bernalillo County Clerk in which plaintiffs-appellees filed an action to compel the county clerk to accept their affidavits of voter registration. Appellant refused to register appellees on the grounds that they resided within areas under the exclusive jurisdiction of the United States and that the laws of New Mexico, § 3-1-1, N.M.S.A., 1953 Comp., would not permit voter registration under the circumstances. The trial court ordered the registration of appellees, from which this appeal ensued.

Under points I, II and III, appellant alleges that the district court erred in concluding, as a matter of law, that (I) both the United States and the State of New Mexico have jurisdiction over the land whereon appellees reside; (II) that appellees have met all the qualifications to vote as required by the State of New Mexico, including that of residency; and (III) that appellant wrongfully refused to allow appellees to register to vote and in ordering appellant to so register appellees.

Appellees admit in paragraph 9 of the complaint that each resides on the area of Sandia Base, New Mexico, which was purchased by the United States government pursuant to Art. I, § 8, Clause 17, United States Constitution, which reads as follows:

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;—And"

In paragrpah 10 of the petition, appellees allege that they were denied the right to register to vote because they reside upon land that is within exclusive federal jurisdiction.

The trial court entered judgment finding that:

"* * * [T]he parties stipulated in open Court that the allegations set forth in said petition were true and correct except that respondent did not stipulate as to the allegation of paragraph 4 [which states 'Registration was wrongfully refused as to all of the Petitioners by the County Clerk of Bernalillo County at direction of the registration officers.'] and [also] did not stipulate as to the allegation that the petitioners were presently domiciled in the state of New Mexico; [as alleged in paragraphs 5, 6, 7 and 8 of the petition.]"

The trial court's pertinent conclusions are: (2) Appellees were residents of New Mexico; (3) met all qualifications to vote; and (4) both New Mexico and the United States had jurisdiction over the land where appellees resided.

Conclusion No. 4 is contrary to the stipulation of the parties in open court and paragraph 10 of the petition, as to the exclusive federal jurisdiction over the involved area. The record before us does not reveal sufficient evidence to support

the trial court's findings and conclusions. It is fundamental that a judgment cannot be sustained on appeal, unless the conclusion on which it rests finds support in one or more findings of fact. Thompson v. H. B. Zachry Co., 75 N.M. 715, 410 P.2d 740 (1966).

■ This case is controlled by Arledge v. Mabry, 52 N.M. 303, 197 P.2d 884 (1948), and cases cited therein, with respect to the exclusive jurisdiction of the United States over the land in question, which was ceded by New Mexico and accepted by the United States and not receded. Royer v. Board of Election Supervisors, Cecil County, 231 Md. 561, 191 A.2d 446 (1963); Annot. 34 A.L.R.2d 1193. Compare, Montoya v. Bolack, 70 N.M. 196, 372 P.2d 387 (1962).

We are not unmindful of the case of Arapajolu v. McMenamin, 113 Cal.App.2d 824, 249 P.2d 318, 34 A.L.R.2d 1185 (1952), but it is adequately disposed of and distinguished in the Royer case, supra, in which the court said:

"* * * The Arapajolu case was decided by an intermediate court, and the case was denied review by the Supreme Court of California, three judges dissenting. The decision turned on the court's construction of the local statute. * * *"

Neither are we unmindful of the case of Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), nor Rothfels v. Southworth, 11 Utah 2d 169, 356 P.2d 612 (1960). The Carrington case, supra, did not involve a federal enclave, but was a problem involving the constitutionality of a Texas constitutional provision which prohibited some members of the armed forces from voting. It is to be noted that the Rothfels case, supra, was a three-to-two decision. Attention is specifically invited to the dissent in that case. In Arledge v. Mabry, supra, this court said:

"* * * The question is a legislative one and, however strong our wish that residents of this community might enjoy the elective franchise, we may not prop-

erly further that desire by an act of judicial legislation."

The legislative action necessary to confer state jurisdiction over the area of the federal enclave pointed out in Arledge, supra, is by an act of the Congress. We do not find a federal statute receding jurisdiction to New Mexico of the area involved herein.

This court has not considered the Attorney General's amicus curiae brief supporting the position of appellees.

The case is reversed and remanded with instructions to the learned trial judge to proceed in a manner not inconsistent with this opinion.

It is so ordered.

NOBLE, C. J., and COMPTON, J., concur.

MOISE, Justice (dissenting).

I find that I cannot agree with the opinion in this case, and accordingly set forth my reasons. The majority has not accorded any weight to the presentation in the briefs and on oral argument, but is content with adherence to the decision of this court in Arledge v. Mabry, 52 N.M. 303, 197 P.2d 884 (1948). In my humble opinion the holding in that case should not be considered as controlling here, and we should unequivocally overrule it insofar as its application would deny the right of the petitioners herein to register and vote.

Since the majority have not done so, I will briefly state the facts. The four petitioners brought this action seeking to require the respondent, county clerk, to register them to vote. They are all over the age of 21 years and for more than twelve months have resided on Sandia Base which is an area in Bernalillo County, New Mexico, acquired by the United States government pursuant to Art. I, Sec. 8, Subsec. 17, of the Constitution of the United States, as authorized by §§ 8–202 and 8–203, N.M.S. A., 1941, since repealed.

Petitioner, Commander Langdon, is a commander in the United States Navy, sta-

tioned at Sandia Base, where he has resided since June 1965. He claims New Mexico as his domicile. It is his home as shown on the military records. He has not voted or attempted to vote in any other state since 1965. He has paid state income taxes in New Mexico since 1965. His automobile has been licensed in New Mexico since 1966. He carries a New Mexico driver's license, files his federal income tax return in New Mexcio, and intends to make New Mexico his permanent home.

Petitioner, Lucylle C. Langdon, is the wife of Commander Langdon, living with him on Sandia Base since June 1965. The facts stated concerning Commander Langdon, insofar as pertinent, apply equally to her.

Petitioner, Colonel William P. Carter, is a Colonel in the United States Air Force, stationed at Sandia Base since 1965. All the indicia of residence related concerning Commander Langdon also apply to him. In addition, he resided in Albuquerque from 1951 to 1955 while on active duty with the Air Force, during which time he was registered to vote and voted in Albuquerque.

Petitioner, Lawrence W. Walsh, is a native-born New Mexican and a civilian, residing on Sandia Base. He has never resided outside New Mexico except while in the military service during World War II.

Each of the petitioners has been denied registration because of residence on Sandia Base and for no other reason. No claim is made that they do not have all other constitutional and statutory qualifications.

While fully accepting the statement in Montoya v. Bolack, 70 N.M. 196, 372 P.2d 387 (1962) that "reservation lands are not in the same category as land obtained by the United States by purchase," and in no sense suggesting that Montoya v. Bolack, supra, is controlling, nevertheless note should be taken of the following pertinent language quoted therein from Rothfels v. Southworth, 11 Utah 2d 169, 356 P.2d 612 (1960), a case closely analogous to this, involving the right of a resident on a military reservation to vote:

"* * * The right to vote and to actively participate in its processes is among the most precious of the privileges for which our democratic form of government was established. The history of the struggle of freedom-loving men to obtain and to maintain such rights is so well known that it is not necessary to dwell thereon. But we re-affirm the desirability and the importance, not only of permitting citizens to vote but of encouraging them to do so.

"* * * Accordingly, even if the statutes are not as clear in this regard as may be desired, doubts should be resolved in favor of the right to vote to the end that citizens may enjoy the full rights and privileges of citizenship."

At this point it is pertinent to note that our decision in Arledge v. Mabry, supra, turned largely on the fact that under Art. I, Sec. 8, cl. 17, supra, and §§ 8–202 and 8–203, supra, the power to exercise "exclusive legislation," deemed synonymous with "exclusive jurisdiction" was ceded to the United States, and accordingly the area was effectively placed outside the control and power of the state, except for the reserved power to serve civil and criminal process of the courts of this state. That this is not literally correct should be evident when we note that residents on lands so acquired by the federal government are subject to state income, gross receipts, compensating, motor fuel, and personal property taxes, 4 U.S.C.A. §§ 104–106 (see Burns v. State, Bureau of Revenue, Income Tax Division, 79 N.M. 53, 439 P.2d 702 (1968), as well as state workmen's compensation laws, 40 U.S.C.A. § 290, state wrongful death and tort law, 16 U.S.C.A. § 457, state fish and game laws, 10 U.S.C.A. § 2671, state unemployment compensation laws, 26 U.S.C.A. § 3305, and state quarantine and health laws, 42 U.S.C.A. § 97. I recognize that it could be said that in each of the instances noted, there is federal authorization or re-investing of jurisdiction. It is nevertheless true that both the state and federal governments do exercise certain powers over the area, and the exclu-

sive federal jurisdiction is more fiction than fact. See also Smith v. State, 79 N. M. 450, 444 P.2d 961 (1968).

Another circumstance where state jurisdiction has been held to exist on federal property similarly acquired is that considered in State v. Mimms, 43 N.M. 318, 92 P.2d 993 (1939), cert. denied Mims v. New Mexico, 308 U.S. 626, 60 S.Ct. 382, 84 L. Ed. 522 (1940), where we held that the state could collect a liquor license fee on an establishment selling liquor thereon. The method of acquisition and the consequences which followed were identical with those present here involving Sandia Base, and the authority there upheld was not based on any federal retrocession.

In Arledge v. Mabry, supra, the court noted State v. Mimms, supra, and disposed of it with the terse comment that it was not controlling, followed by a discussion of the facts of the case wherein it is suggested that the court arrived at a correct conclusion although based on an erroneous view of facts. I quote from the Arledge case:

"* * * State v. Mimms having been correctly decided under the true fact as to character of the land involved, we have no hesitancy in saying we should decline to give it stare decisis effect whether correctly determined or not on a false fact, inadvertently stipulated to be true. So considered, we pass the effect of our decision in the Mimms case."

The court, in Arledge v. Mabry, supra, found the earlier Mimms decision troublesome. This was noted and commented on in Crownover v. Crownover, 58 N.M. 597, 603, 274 P.2d 127, 130 (1954), in the following language:

"* * * [T]his Court had difficulty when faced with the problem of harmonizing its thinking in the Arledge case with the earlier Mimms case. The two come close to conflict; however, it is perhaps wise to deny that one of these cases should be overruled and one followed. The concept of exclusive jurisdiction of the United States over lands ceded by the states is a developing one

as are all such concepts with their application to the increasing number of factual situations; the interstate commerce clause is an example."

By taking note of and following the developing concepts concerning the meaning of exclusive federal jurisdiction pointed to in the quotation from Crownover v. Crownover, supra, I come to a consideration of the rule to be applied under the facts of this case.

I recognize that at the time Arledge v. Mabry, supra, was decided, direct authority, such as there was, generally supported the conclusion there reached. See Annot., 34 A.L.R.2d 1193. Since that date, a number of cases have been decided which, to say the least, cast some doubt on the correctness of the result, and indicate the development of a more reasonable and rational approach. Among these are Arapajolu v. McMenamin, 113 Cal.App.2d 824, 249 P.2d 318, 34 A.L.R.2d 1185 (1952); Rothfels v. Southworth, supra; Adams v. Londeree, 139 W.Va. 748, 83 S.E.2d 127 (1954), and Kashman v. Board of Elections, 54 Misc.2d 543, 282 N.Y.S.2d 394 (S.Ct.1967). Of these, possibly only Rothfels v. Southworth, supra, recognized by us in Montoya v. Bolack, supra, as possibly being contrary to Arledge v. Mabry, supra, is directly in point. Because of its reasoning, I find it extremely persuasive.

However, I do not rely entirely upon what is there said. Rather, I find support for my position in the holding in Crownover v. Crownover, supra. That case upheld an amendment to our laws relating to residence for divorce purposes which stated, "* * * persons serving in any military branch of the United States government who have been continuously stationed in any military base or installation in the state of New Mexico for such period of one (1) year, shall for the purposes hereof, be deemed residents in good faith of the state and county where such military base or installation is located." (§ 22-7-4, N. M.S.A., 1953). The amendment had followed two decisions by this court. In one, it was held that something more was re-

quired to establish domicile sufficient to support an action for divorce than mere presence in the state for the required period by virtue of military orders. Allen v. Allen, 52 N.M. 174, 194 P.2d 270 (1948). In the other, it was determined that the necessary residence to support domicile for divorce could not be obtained on land acquired by the federal government by condemnation. Chaney v. Chaney, 53 N.M. 66, 201 P.2d 782 (1949). (The same area in Los Alamos, considered in Arledge v. Mabry, supra, was involved.)

In its decision, the court, in Crownover, supra, relied heavily on Craig v. Craig, 143 Kan. 624, 56 P.2d 464 (1936), and the following language which it quoted and adopted: "Does our divorce law, including the amendment, constitute an unlawful encroachment on federal jurisdiction? We think it does not." I would go a step further and quote additional language in Craig v. Craig, supra, found by this court to be "pertinent" and "convincing":

"The amendment in the instant case simply opens convenient courts of this state to those residing on reservations within the state. In other words, it provides a forum for the adjudication of domestic difficulties. Inhabitants of the reservation are not obliged to invoke its jurisdiction. It is not mandatory they do so. That Congress has power to legislate on the subject is not questioned. That it has not seen fit to do so is admitted. Approximately a half century has passed since the cession of this territory which now embraces a population of approximately 8,000 people. During this long period no federal provision has been made for the settlement of the domestic problems of these people. At least until state laws are superseded by appropriate federal legislation, the validity of existing legislation should be sustained. * * *

" * * *

"Although jurisdiction over this reservation was ceded to the United States, Congress was not obliged to exercise it. Until existing laws are abrogated by the new sovereign, they remain in full force and unimpaired. People v. Lent, 2 Wheeler, Cr.Cas. (N.Y.) 548; Ft. Leavenworth R. Co. v. Lowe, Sheriff, 27 Kan. 749; Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264; Chicago R. I. & P. R. Co. v. McGlinn, 28 Kan. 274; Chicago, Rock Island, etc., Co. v. McGlinn, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270 ; Hoffman v. Leavenworth, etc., Power Co., 91 Kan. 450, 138 P. 632, 50 L.R.A. (N.S.) 574; 15 R.C.L. 113."

I would also take particular note that the court in Crownover v. Crownover, supra, made a special point of the fact that the legislative intent was apparent, and since no conflict with any federal authority resulted, it should be given effect.

How does this apply here? In my view the situations are parallel, except that as to voting there is a constitutional provision requiring a certain residence, which is not present in connection with divorce proceedings. The constitution, in Art. VII, Sec. 1, provides as qualifications for voting, residence "in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election * * *." Section 3–1–1, N.M.S.A., 1953, as amended in 1947 (ch. 100, § 1, N.M.S.L.1947), reads in part as follows:

" * * *

"As used in this act, unless the context requires otherwise: The words 'qualified elector,' 'elector' or 'voter' means any citizen of the United States who at the date of the election will be over the age of twenty-one (21) years and will have resided in the state twelve (12) months, in the county ninety (90) days and in the precinct in which he offers to vote thirty (30) days, next preceding the election, except idiots, insane persons, persons convicted of a felonious or infamous crime unless restored to political rights.

"Residence within the meaning of the above paragraph shall be residence upon land privately owned, or owned by the State of New Mexico, any county or mu-

nicipalities thereof; or upon lands originally belonging to the United States of America or ceded to the United States of America by the state of New Mexico, any county thereof, or any municipal corporation or private individual, by purchase, treaty or otherwise."

As I read the second paragraph, it states unequivocally that residence for the required period may be acquired when residing on lands ceded to the United States by anyone or pursuant to any procedure. It is clear to me that the legislature thereby expressed its intention to grant the right of suffrage to persons situated as are petitioners, just as it was certain that by amendment of the residence provisions in the divorce laws, the legislature intended to permit residents on military reservations to obtain domicile for divorce as decided in Crownover v. Crownover, supra. It remains to be determined if there is some constitutional impediment to such a result when residence for voting purposes is being established that was not present in connection with residence for divorce purposes.

For no better reason than that it was stated in Sinks v. Reese, 19 Ohio St. 306, 2 Am.Rep. 397 (1869) that:

"* * * It is not constitutionally competent for the general assembly to confer the elective franchise upon persons whose legal status is fixed as nonresidents of the state."

it was stated in Arledge v. Mabry, supra, that § 3–1–1, supra, had no effect to alter the residential situation resulting from the acquisition of the property by the federal government. In effect, what is stated is that the federal property is outside the State of New Mexico and that the legislature could not by any enactment make it otherwise. I can only inquire as to why this should be true when residence for voting purposes is involved but not true when residence for divorce purposes is at issue. I see no ready answer.

Further, this is not a contest between the state and federal governments over who has jurisdiction (indeed the federal government through the U. S. Attorney as amicus curiae urged that the state had the power and jurisdiction in Arledge v. Mabry, supra). The federal government has never attempted to exercise any jurisdiction in this area. If it did, or if it questioned the right of the state, we might have a different situation. This was pointed out in Craig v. Craig supra.

I would add a word about Sinks v. Reese, supra, relied on in Arledge v. Mabry, supra, for the holding that the legislature's efforts to give voting rights to residents on federal property violated the constitution. First, the Sinks case made the statement, but cites no authority whatever to support it. Second, it states that by the act of cession the property covered became as foreign to the state of Ohio as were other neighboring states. This conclusion is based on the fact that "* * * there is something in itself unreasonable that men should be permitted to participate in the government of a community, and in the imposition of charges upon it, in whose interests they have no stake, and from whose burdens and obligations they are exempt." That this reasoning is no longer persuasive should be apparent from an examination of the areas recounted above wherein state powers are exercised over residents on federal property acquired as was Sandia Base. Also, those considerations, present even to a greater degree on Indian reservations, were not considered controlling in Montoya v. Bolack, supra. I would also mention in passing that, as already noted, the situation as it has developed is directly to the contrary and actually results in taxation without representation, a condition even more undesirable, in my view, than the opposite as witness our reasons for revolting against the English rule. Third, the Ohio court placed considerable reliance on Commonwealth v. Clary, 8 Mass. 72 (1811), a case holding the state had no jurisdiction to enforce by criminal proceedings a violation of state law requiring a license to dispense alcoholic beverages. That our holding in State v. Mimms, supra, was directly contrary to this decision

should be self-evident. Fourth, I would point to Renner v. Bennett, 21 Ohio St. 431 (1871) and suggest that it cannot be reconciled with Sinks v. Reese, supra, which the court disposed of summarily stating that it would not reconsider the case or determine if the facts were materially different.

I readily agree that by virtue of Art. VII, Sec. 1, N.M.Const., which makes twelve months' residence in New Mexico a qualification to vote, the legislature could not pass a valid law making residents of persons who clearly reside outside the geographical limits of the state as, for example, in El Paso or in Arizona. Such could be nothing but an effort to avoid the constitutionl restriction, and void. However, to my mind, it is not arbitrary, imaginary or unreasonable for the legislature to define "resident" as including certain people living within the exterior boundaries of the state on federal property over which the federal government could, but has not provided for the voting franchise. Compare Howard v. Commissioners of Sinking Fund, 344 U.S. 624, 735 S.Ct. 465, 97 L.Ed. 617 (1952). This is what was done by the legislature when in 1947 it amended § 3–1–1, N.M.S.A., 1953 (ch. 100, § 1, N.M.S. L.1947). Under oft-repeated rules, we are bound not to declare the act to be unconstitutional unless no other conclusion can reasonably be reached, and its unconstitutionality is clear after resolving all doubts in favor of constitutionality. Peyton v. Nord, 78 N.M. 717, 437 P.2d 716 (1968); City of Raton v. Sproule, 78 N.M. 138, 429 P.2d 336 (1967).

Petitioners, having resided within the territorial limits of New Mexico, albeit on a federal enclave, for the requisite period, and being subject to numerous laws applicable to citizens of the state—and, in particular, those requiring the payment of a variety of taxes—and no provision having been made by the federal government, in the exercise of its legislative power, for voting by them, it seems to me that under the reasoning of the cases cited above and, in particular, Crownover v. Crownover, supra, no impediment exists to their being held to be "residents" qualified to register and vote. Indeed, to deny them the right here sought may very well amount to a denial of equal protection of the laws under the United States Constitution. Cornman v. Dawson, 295 F.Supp. 654 (D.C.Md. 1969). But see Royer v. Board of Election Supervisors, Cecil County, 231 Md. 561, 191 A.2d 446 (1963).

I would add just a word concerning the comment in the opinion by the court to the effect that conclusion No. 4 of the court is contrary to the stipulation of the parties and paragraph 10 of the petition, wherein it is stated that the federal government had exclusive jurisdiction over the involved area. When jurisdiction over the territory is viewed correctly, as set forth in this dissent, it becomes clear that there is no conflict and that the conclusion has a firm basis.

For the reasons stated, I would affirm the trial court.