## St. John v. St. John.

June 19, 1942.

364

Garland R. Hubbard for appellant.

Lawrence S. Grauman and Dante LaFranche for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversed with directions.

The appellant, Lawrence Robert St. John, a Captain in the United States Army, filed this action in the Jefferson Circuit Court seeking a divorce from the appellee, Barbara St. John, on the ground of abandonment. The appellee entered her appearance to the action but did not contest it. Proof was taken and the chancellor was of the opinion that the evidence sufficiently established abandonment but dismissed the petition on the ground that appellant had not been a continuous resident of this state for a year next before the institution of the action as required by section 2120 of the Kentucky Statutes. On this appeal the case is briefed for the appellee by the County Attorney pursuant to request of the Circuit Judge.

Appellant was appointed to the United States Military Academy while a resident of Martinsville, Indiana, and, following his graduation in 1935, was assigned to military duty at different posts. In the Spring of 1940 he was assigned to Fort Knox. He and appellee were married in November, 1940, and went to housekeeping in West Point, a short distance from Fort Knox. Appellant bought furniture for this purpose and it is now stored in this state. The parties lived about six ·weeks at West Point and then moved to Vine Grove and lived

there until March 1, 1941, when appellant was ordered by the Post Commander to move to Fort Knox, which he did. Since that time he has lived on the military reservation. Appellant's father has been dead many years. His mother left Martinsville in 1937 and rented her home. This home was sold in 1939. Since leaving her home, she resides with friends and has no fixed abode.

Appellant, in his testimony, said:

"I consider Kentucky as my home. I consider it as both my legal and actual residence. I established what I thought and intended to be a permanent residence here in Kentucky when I married on November 2, 1940. I bought furniture which is stored in Kentucky. I joined the Knights Templar at Elizabethtown, Kentucky, over a year ago and I intend to keep my membership there. I have no other residence. I reside in Kentucky and have continuously resided here since November 2, 1940."

A witness testifying for him verifies some of these facts and says that he heard appellant declare he liked Vine Grove and intended to live there permanently; that on a number of occasions while appellant and his wife were living together and after his wife left him he heard appellant say that he considered Kentucky as his home. None of this testimony is disputed or contradicted.

The right of a soldier to acquire a legal residence in a locality to which he has been assigned cannot be doubted. 28 C. J. S. 418, Domicile, Sec. 12; Matter of Cunningham, 45 Misc. 206, 91 N. Y. S. 974; Matter of Grant's Estate, 83 Misc. 257, 144 N. Y. S. 567; Percy v. Percy, 188 Cal. 765, 207 P. 369. And this rule holds good even though the soldier is assigned to a military post on land ceded by a state to the federal government so that residence at the post would not constitute him a resident of the state. The text of 17 A. J. 634, based on the authority of Trigg v. Trigg, 226 Mo. App. 284, 41 S. W. (2d) 583, says:

"* * * if a person engaged in military service by animus ad factum establishes a residence near but outside the military post, with the purpose of making such residence the home of himself and his wife, he may acquire a domicile in such place."

Having acquired a legal residence, it can only be

lost or changed by the exercise of conscious volition on the part of the soldier, and the mere fact that he leaves his post involuntarily under army orders does not cause him to lose his actual or legal residence. Radford v. Radford, 82 S. W. 391, 26 Ky. Law Rep. 652. Hence, if appellant actually acquired a legal residence in Kentucky, the mere fact that under army orders he moved his residence to Fort Knox, which has been ceded to the federal government, did not operate to terminate or change such residence even though it be conceded that the cession of the military reservation to the federal government destroyed the status of that reservation as a part of this state for all purposes, a question not free from doubt.

The only remaining question, therefore, is whether the evidence was sufficient to show that appellant had established his legal residence in Kentucky. While the term "residence" has a much narrower technical significance than the term "domicile;" the two terms are almost universally used interchangeably in statutes. This court holds that the jurisdictional prerequisite of one years' residence provided by section 2120 of the Kentucky Statutes includes not only citizenship or domicil, George v. George, 190 Ky. 706, 228 S. W. 408, 39 A. L. R. 700, but also actual residence, Tipton v. Tipton, 87 Ky. 243, 247, 8 S. W. 440.

Appellant had an actual residence in this state, so the controversy may be narrowed in the final analysis to the question whether he had acquired a domicile in Kentucky. It is difficult to enunciate an all inclusive definition of the term "domicile" but in a legal sense it is universally regarded as that place where a person has his fixed, permanent home, and to which he has, whenever absent, the intention of returning and from which he has no present intention of moving. It is further universally held that in order to acquire a domicile all that is necessary is residence in the new locality and an intention to remain there, accompanied by an intention to abandon the old domicile. As it has been frequently expressed, there must be a concurrence of the fact and the intent, the factum and the animus manendi.

If the testimony of appellant and his witness is to be accepted, appellant had undoubtedly acquired a domicile in Kentucky. He says that he had abandoned all intention of returning to Martinsville, his former domicile,

and that he intended his residence in this state to be a permanent one. His witness heard him say on numerous occasions that he intended to live at Vine Grove permanently. In the absence of contradictory evidence we think this testimony must be accepted as establishing the animus manendi on appellant's part which, concurring with his actual residence, was sufficient to establish a domicile.

The chancellor, in finding that appellant had not acquired a domicile in this state, in effect ignored the direct and positive testimony as to intention and relied entirely on inferences at variance with this testimony. In the usual and ordinary case involving domicile, the one whose domicile is in question is not a witness and inferences from proven facts and circumstances become all important but where, as here, the one whose domicillary status is in question gives positive uncontradicted testimony as to his intention and the proven facts and justifiable inferences therefrom do not render such testimony incredible, it should be given due consideration and weight. We think there was nothing in the evidence to discredit appellant's testimony and that of the witness referred to and render such testimony unworthy of belief. This being true, the evidence undoubtedly established that appellant had acquired a domicile in Kentucky which, concurring with actual residence, was sufficient to entitle him to maintain the action since, as above indicated, his domicile or legal residence here was not terminated by his moving into the military reservation under army orders.

A question not discussed in the briefs but naturally presenting itself is as to the venue of the action in Jefferson County. We have held, however, that venue of a divorce action may be waived. Tudor v. Tudor, 101 Ky. 530, 41 S. W. 768; Kinser v. Kinser, 186 Ky. 173, 216 S. W. 121. Venue was waived by the appellee by entering her appearance without raising the question of venue.

The judgment is reversed with directions to enter a judgment granting appellant a divorce from the bonds of matrimony.

Whole court sitting, except Judge Ratliff.