194 P.2d 270

**ALLEN v. ALLEN.**

No. 5080.

Supreme Court of New Mexico.

May 17, 1948.

Rehearing Denied June 21, 1948.

W. C. Whatley, of Las Cruces, for appellant.

George A. Shipley, of Alamogordo, for appellee.

LUJAN, Justice.

This is an appeal from a judgment granting a divorce to appellee from his wife, the appellant, and presents a question of jurisdiction.

The only point relied upon for reversal is the court's action in refusing to dismiss appellee's complaint for the reason that it was made to appear that the appellee was not in fact, and had not been, an actual bona fide resident of the State of New Mexico, for one year preceding the filing thereof.

Appellee, by his complaint, among other things alleged "that he is a resident of Otero County, New Mexico, and has been a bona fide resident of said county and state continuously for more than one year immediately preceding the filing of his complaint." By her answer, appellant denied this allegation and further alleged

that appellee is and has been a resident of the State of Illinois for more than one year prior to the filing of his complaint.

Following the hearing on June 14, 1947, on the motion to dismiss the complaint, the appellant and her Illinois attorney returned to Chicago, and on June 20, 1947, an order was entered denying the motion and giving the appellant until June 21, 1947, in which to answer. On said date the answer was filed and on June 23, 1947, appellee noticed the case for trial as of June 30, 1947. On that date the appellant filed a motion requesting additional time within which to take depositions of non-resident witnesses and to further enable her to contact other witnesses preparatory to taking their testimony in order to defend' herself. At this time both the appellant and her counsel in chief were back in Chicago, and upon denial of her motion, her local counsel, announced in open court that he would' not further participate in the hearing and withdrew from the court room, thereupon the trial proceeded ex parte to its determination.

Chief Justice Mills, speaking for the court in the case of De Baca v. Wilcox, reported in 11 N.M. 346, 68 P. 922, 923, which is analogous to the case in bar, said: "We will now consider the second point,— as to whether or not we are estopped from considering the points assigned as error, because plaintiffs in error suffered a judgment to go against them by default in the lower court, *and reserved no exceptions* on which to base a writ of error. It is a general rule that errors complained of must be objected to, and exceptions saved, or they will be disregarded in an appellate court. This principle has been frequently enunciated by this court. Neher v. Armijo [11 N.M. 67], 66 P. 517 and cases cited. But we have also recognized the exception to the general rule which authorizes us to notice without exception jurisdictional and other matters which· may cause a case to be inherently and fatally defective. [Neher v. Armijo, 11 N.M. 67, 66 Pac. 517]. *The question of jurisdiction may be raised for the first time in the appellate court,* or the court may, of its own motion, take notice of such want of jurisdiction. 2 Cyc. 680." (Emphasis ours)

The appellee, at the time he was inducted into the United States Army and prior to his transfer to Alamogordo, New Mexico, was a legal resident of the State of Illinois.

 The right to apply for or obtain a divorce is not a natural one, but is accorded only by reason of statute, and the state has the right to determine who are entitled to use its courts for that purpose and upon what conditions they may do so. 17 Am.Jur. section 8, page 151.

Section 25-704, 1941 Comp., reads as follows: "The plaintiff in action for the

dissolution of the bonds of matrimony must have been actual resident, *in good faith,* of the State for one (1) year next preceding the filing of his or her complaint; * * *" (Emphasis ours)

The appellant testified as follows regarding his claim of residence in New Mexico.

"* * * * * *

"Q. Where do you live, Mr. Allen? A. At 411 Thirteenth Street, Alamogordo, New Mexico.

"Q. That's in Otero County? A. That's right.

"Q. How long have you been a resident of Otero County, New Mexico? A. Since September 20, 1945.

"Q. Have you been a resident of the State of New Mexico continuously since that time? A. Yes, I have.

"Q. And resided here in Otero County? A. That is correct."

Duncan Campbell of Alamogordo, New Mexico, testified for the appellee as follows:

"* * * * * *

"Q. At any time soon after you first became acquainted with Captain Allen about Christmas, 1945, did he ever discuss with you his plans as to what he intended to do *when the war was over?* A. We used to have quite a few discussions and we talked quite a few times about his wanting to go into business here in Alamogordo.

"Q. From your conversation with him with reference to his *future plans,* did you understand that this was to be his future home? A. That's what I understood from his plans." (Emphasis ours.)

The trial court found as follows: "That the plaintiff, Byron D. Allen, is a bona fide resident of the State of New Mexico, and has been a resident of said State and of Otero County, New Mexico, continuously for more than one year immediately prior to the filing of his complaint herein on the 24th day of March. A.D. 1947."

There is apparently no question that the appellee actually lived, and continued to live in this state during the required period. The dispute is about whether such dwelling or living here constituted him a bona fide resident in the use of that term in the statute. We are of the opinion that it did not.

Article 7, Section 4, of the New Mexico Constitution provides: "No person shall be deemed to have acquired or lost his residence by reason of his presence or absence while employed in the service of the United States or of the state, nor while a student at any school."

However, this section of the constitution does not mean that a soldier stationed in this state may not acquire residence in

this state, but it does mean that he may not acquire a residence from the mere fact that he was stationed therein for whatever period of time he may be so stationed. Apart from that service he must establish a residence in the state with the intention of making it his permanent residence.

The only external manifestation appellee made as to his intention to make Alamogordo his permanent home was the renting of a dwelling house for himself and family. This, however, was an incident to his army life. Residence in New Mexico was not his object.

■ While ordinarily the domicile of a soldier is not changed or lost by his induction into military service, where he is under orders from his superiors and subject to transfer to different posts, as in the case in bar, yet, a new domicile may be acquired by a soldier as well as by any civilian if both the fact and the intent concur. Kankelborg v. Kankelborg, 199 Wash. 259, 90 P.2d 1018; Ex parte White, D.C., 228 F. 88; Trigg v. Trigg, 226 Mo.App. 284, 41 S.W.2d 583; Gallagher v. Gallagher, Tex.Civ.App., 214 S.W. 516; Harris v. Harris, 205 Ia. 108. 215 N.W. 661; Wilson v. Wilson, Tex.Civ. App., 189 S.W.2d 212; Pettaway v. Pettaway, Tex.Civ.App., 177 S.W.2d 285.

■ Appellee urges that we are bound by the substantial evidence rule. Ordinarily an appellate court will not disturb, but will adopt, the findings of the trial court where there is a conflict, in the evidence. The rule is otherwise where there is a substantial failure of the evidence to support the findings. In this case the appellee came to the State, not of his own volition, but by order of the United States Government, and was subject to be transferred whenever his superiors saw fit so to do. "Actual resident in good faith" as used in our statute is very much the same language as used in the statutes of other states concerning divorces, and we are therefore not without a construction of the expression by the highest courts of such states. In Hamill v. Talbott, 81 Mo.App. 210, 215, the court said: "The statutory terms 'resident or residence' as used in divorce statutes, contemplate, as we think, an actual residence with substantially the same attributes as are intended when the term 'domicile' is used. They do not mean the place where the defendant in fact resides for the time being. They mean a residence of a permanent and fixed character, a domicile."

In the case of Shilkret v. Helvering, 78 U.S.App.D.C. 178, 138 F.2d 925, 927, the court said: "The Commissioner argues that in deciding the case we are bound by the substantial evidence rule and that it is not our function to weigh the evidence or to choose between conflicting inferences. On the ground that there is substantial evidence to support the findings, he says our duty is to affirm without more. But we think that rule has not applicability here. Domicile, we re-

cently said, is a compound of fact and law, and where, upon admitted or undisputed facts, the decision turns on controverted legal principles, it is reviewable. Here there is no dispute as to the essential facts, the conflict relates only to their legal effect. The question must be determined by the application of certain rules long established by the courts, State and Federal, to find where a man's home really is, and there is no dearth of authority on the subject. In one of our most recent pronouncements in this respect, we said that to effect a change from an old and established domicile to a new one, there must be the absence of any present intention of not residing in the latter permanently or indefinitely. Or, stated differently, there must be a fixed purpose to remain in the new location permanently or indefinitely. For domicile once acquired is presumed to continue until it is shown to have been changed, and to show the change two things are indispensible,—'First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject.' "

■■ Having held that the appellee was not a bona fide resident of the state of New Mexico as provided for by Section 25-704, 1941 Comp., it follows that the trial court did not have jurisdiction to entertain and enter judgment in the case, consequently the action of the trial court in entering such judgment was coram non judice. The court below having no jurisdiction to enter the judgment, we hold, that the same may be raised for the first time in this court, or that we can take notice of such want of jurisdiction, of our own motion, without any exception having been reserved in the lower court. See Sais v. City Electric Co., 26 N. M. 66, 188 P. 1110, and cases cited: 4 C.J. S., Appeal and Error, § 258(1), page 506.

The judgment is reversed with directions to the lower court to enter its judgment dismissing the complaint. And it is so ordered.

BRICE, C. J., and COMPTON, J., concur.

McGHEE, Justice (specially concurring).

I agree with the majority that the testimony of the plaintiff is not of the clear and convincing type that should be required in these divorce cases filed by soldiers sent here from other states. As Judge of the Fifth District during the war period, I had three army camps in the district and required a soldier plaintiff, who had been sent

into the state in military service, to make a strong showing on residence before granting a divorce. It may be that little more than a pro forma showing was required in Otero county and that by reason thereof the plaintiff may not have offered all proof on the point which he might have had available, and that on another trial he might be able to make a stronger showing. On the other hand, as I view the record, the defendant was not given a fair opportunity to procure and present her evidence in support of her claim that the plaintiff had not been a bona fide resident of New Mexico for one year next preceding the filing of the complaint.

Here are the material parts of the record proper:

1948—

··March 24—Complaint filed.

April 21—Special appearance entered for the purpose of questioning the jurisdiction of the court.

April 23—Motion to dismiss filed by the defendant on the ground the plaintiff was a non resident of New Mexico, and therefore the court did not have jurisdiction of the cause.

·· April 23—Notice of pendency of suit with appearance day set for June 7, 1947. Affidavit of mailing filed this date.

May 13—Notice by plaintiff of hearing on motion to dismiss for May 17, 1947.

May 16—Motion filed by defendant's attorney for time to take depositions in Illinois to support the allegations of her motion that the plaintiff was in fact a resident of that state, and not a resident of New Mexico.

May 16—Affidavit and proof of publication.

May 17—Order continuing hearing on motion to dismiss until May 24, 1947.
1947—

June 14—The defendant filed a motion asking for $400.00 to cover her expenses of preparing her defense and of attending the hearing upon her motion to dismiss, and also for traveling expenses of her Chicago attorney, and for a reasonable sum as attorneys' fees. The motion recited that she was a resident of Chicago, had two children whose interests it was necessary to protect, etc.

June 14—Defendant entered her general appearance in the case.

June 20—Order dated June 19, 1947, denying motion to dismiss and giving the defendant until June 21, 1947, in which to answer, although she had asked for additional time.

June 23—Notice of final hearing filed by plaintiff for June 30, 1947.

June 30—Motion by defendant for an order granting her further time within which to take depositions of non resident witnes-

ses, stating that such time was necessary to enable her to get in touch with her witnesses and arrange for the taking of their testimony.

June 30—Order entered on motion of the defendant for suit money, expenses and attorney's fees, allowing $29.60 for expenses and $100.00 as attorney's fees, and it is recited that this was at the rate of 5 cents per mile from the state line (New Mexico-Texas near Tucumcari) and return, plus the sum of $100.00 as attorney's fees. (The defendant and her attorney had made the trip from Chicago to Alamogordo and return.)

June 30—Order entered denying an appeal from the order refusing to dismiss the case.

June 30—Final decree of divorce and order denying a continuance.

Following the submission of the motion to dismiss on June 14, the defendant and her Illinois attorney returned to Chicago. No action had then been taken on her motion for expenses, suit money and attorneys' fees, and I feel she and her counsel had the right to assume that in the event the motion to dismiss was denied she would be granted a reasonable time in which to take the depositions of her Illinois witnesses, and also that she would be granted a reasonable sum to cover expenses.

Instead of following this course the trial judge, by order dated June 19, 1947, gave her two days in which to answer and then put the case to trial on June 30, 1947, when she was in Chicago and without her having had time to take and return her depositions.

The matters shown by the record do not square with my ideas of administering justice. It should be remembered that a divorce action is really a triangular proceeding, to which the husband, the wife, and the state are parties. The state is not allowed to intervene and become an actual party as in such cases the court represents the state's interests. In these cases the courts are more ready than in other proceedings to grant continuances. See 17 Am.Jur. Sec. 13, Divorce and Separation, p. 155. Also it should be remembered that the welfare of two babies was involved in this case.

It is true that on June 30 her then local attorney (not the one appearing in this court) picked up his papers and went hence instanter following the allowance of the paltry sum allowed for expenses and the denial of his motions for an appeal and a continuance, but what could he do without a client, depositions or witnesses? It is true that sufficient time had been given for his client to return from Chicago to Alamogordo, if she was able to finance the trip, but she had lost one testifying bout with the plaintiff on the residence question when she went into the June 14 hearing without corroborating witnesses or depositions, and as she had not been allowed either the money

or time to take her depositions why should she come back and undertake what must have reasonably appeared to be a hopeless task? Her attorney might have stayed in the court room and have made a record that would have later been of some help, but it is more likely that opposing counsel would have only nailed his case tighter.

As above indicated, I would remand the case for a new trial, but with directions to grant the defendant sufficient time and suit money to obtain her depositions and attend the trial, together with a substantial increase in the attorneys' fees. However, as I am unable to obtain the concurrence of two of the other members of the court and thus dispose of the case, I will concur in the result announced in the majority opinion.

SADLER, Justice (dissenting).

The prevailing opinion reveals the anomalous situation where counsel for a litigant, disgruntled at the court's denial of motion for continuance interposed when the cause came on regularly for trial, by walking out on the court and abstaining from participation in the trial, has placed his client in a better position to challenge sufficiency of the evidence to support the findings made than if he had remained in the trial, although without reserving the question for review.

My unwillingness to concur in the majority opinion does not rest upon any disagreement between us over the right of this court to notice, without exception, jurisdictional matters, even though raised for the first time in this court. The opinion in the case they cite and quote, De Baca v. Wilcox, 11 N.M. 346, 68 P. 922, supports our right so to do as does the case of Davidson v. Enfield, 35 N.M. 580, 3 P.2d 979, and as do others which might be cited. It may be conceded, too, that an affirmative finding, either by the court or jury, of a jurisdictional fact essential to the court's right to enter judgment, wholly devoid of evidence to support it, although challenged here for the first time on such ground, falls within this class of cases. It should be pointed out, however, that there are statements in some of our opinions which create confusion on the right to do this very thing. See Woods v. Fambrough, 24 N.M. 488, 174 P. 996, and State v. McKenzie, 47 N.M. 449, 144 P.2d 161. Where we disagree is in making such a claim the basis of a review of the evidence to determine its substantiality, or otherwise examining it beyond the point of ascertaining whether there be *any* evidence which, with legitimate inferences therefrom, tends to support the finding.

In their opinion the majority state, as if of some significance, that the order entered June 20, 1947, denying the motion to dismiss gave defendant until June 21 to answer. This order was signed and dated June 19. Its background discloses that at a formal hearing on said motion, duly noticed for

May 17, the defendant defaulted, neither she nor her counsel appearing, after having filed a motion the day before seeking continuance of the hearing to secure the depositions of herself and unnamed, unlocated witnesses in Illinois and "other places". When neither defendant nor her counsel appeared on the day set for hearing on the motion on May 17, the trial court of its own motion entered an order setting the hearing over to May 24, 1947. For some reason not appearing of record, the hearing was not held on May 24, but instead was passed by stipulation to June 14, as recited in the order entered June 20 denying the motion. On June 14 the defendant appeared in person as well as by her two attorneys, the one from Chicago and the other from Alamogordo.

Before entry of the order of June 20, hearing on the motion to dismiss had been held in Alamogordo on June 14, 1947, as already stated, at which time evidence was taken and findings made in the order overruling the motion. It also gave defendant until June 21, 1947, to file an answer, if desired. Whether the trial court's action in ruling defendant to answer two days after signing the order on June 19, and one day following its entry, amounted to an abuse of discretion, we have no way of knowing. Certainly, it could have no bearing on the question of residence upon which the majority opinion is rested. The defendant had defaulted in appearance for the hearing on motion to dismiss set for May 17, notwithstanding the filing of a motion the day before seeking postponement thereof to take depositions of yet undiscovered witnesses. The cause had been pending since March 24, appearance day had come and gone by some two weeks, save as tolled by the special appearance on motion to dismiss, and general appearance had actually been entered the week before without answering. The trial court may very well have felt, although it can make no difference now, that dilatory tactics were being resorted to and that it was time to put the case at issue.

The cause was placed at issue by the filing of defendant's answer on June 21, 1947, as ordered. On June 23, plaintiff's counsel noticed the case for hearing on the merits on June 30, following. When the case came on regularly for trial on the date last mentioned, the defendant filed still another motion for time to take depositions of unnamed and unlocated non-resident witnesses. There was no allegation of diligence in seeking to identify, locate and take their depositions, notwithstanding pendency of the suit since late March, 1947, with the proceedings therein already mentioned and the special appearance of defendant on April 23 to challenge jurisdiction for claimed want of bona-fide residence on plaintiff's part. This was the first defense advanced in defendant's answer later filed. The trial court in the exercise of a sound discretion declined to grant the motion to postpone the trial, holding that "said motion was not

filed in apt time and does not state sufficient ground for a continuance of this cause." The language just quoted from the final decree is followed by the formal order overruling the motion and a recitation of abandonment of the trial by defendant's attorney. It reads: "Wherefore, it is Ordered, Adjudged and Decreed, that the Motion of the Defendant for a continuance be and the same is hereby denied.. Whereupon, the said Attorney for the defendant announced in open Court that he would not participate further in the hearing and withdrew from the Court."

The majority do not rest their reversal on any claim that the denial of this motion was an abuse of discretion. Obviously, it was not. Instead, and contrary to the long established doctrine prevailing in this court that, absent a request for findings or exceptions to those made, the evidence will not be reviewed to determine whether they are supported by substantial evidence (Woods v. Fambrough, 24 N.M. 488, 174 P. 996; Murphy v. Hall, 26 N.M. 270, 191 P. 438; Williams v. Kemp, 33 N.M. 593, 273 P. 12, Santa Barbara Tie and Pole Co. v. Martinez, 34 N.M. 181, 279 P. 71; Alexander Hamilton Institute v. Smith, 35 N. M. 30, 289 P. 596; Damon v. Carmean, 44 N.M. 458, 104 P.2d 735; Veale v. Eavenson, N.M., 192 P.2d 312), the majority have proceeded to review the evidence and in so doing have disregarded another cardinal rule governing where a review is awarded upon a proper challenge to findings, namely, that they will not be disturbed if found to have substantial support in the evidence.

Even if the majority were entitled to review the evidence, as they are not on the record before us, they still are confronted by the substantial evidence rule. Under it the finding of residence made by the trial court is not to be overturned if it has substantial evidence to support it. It is difficult to understand how any one can say that finding lacks substantial support when the only evidence on the subject was that introduced by the plaintiff, all of which tends to support his claim of residence. The majority purport to quote all the testimony bearing on the issue of residence. Just why they omit that which is set out below, it is difficult to understand. Obviously the trial judge was entitled to consider it in making a finding on the vital issue of residence. Following by a few sentences the portion of plaintiff's testimony quoted by the majority, questions were asked him and replies made as follows:

"Q. At the time you established your residence in Otero County, in September, 1945, state whether or not the defendant was a resident here with you. A. She was.

. * * * * * *

"Q. You say this particular quarrel lasted for some two or three days: What

did your wife do with reference to leaving? A. She informed me that she was leaving and I said, 'All right, if you want to go I can't force you to stay.' *And I told her that despite the fact that we had fallen out among ourselves, that I was still willing to maintain a home for her and the children here in Alamogordo.* During the next two or three days she would tell me that she was either staying or going; and she changed her mind a half dozen times. And regardless of her decision I told her she could go or stay *and if she wanted to stay I would maintain a home for her.* She finally made train reservations and called me and asked me to pick up her ticket; so, I went down and bought a train ticket. She never had unpacked her baggage.

"Q. Did you give your wife any reason to leave you early in March, as she did? A. No, I don't think so.

"Q. *Had you provided a home here?* A. *Yes, sir.*

"Q. And the necessities of life and such as were necessary for her comfort? A. *Yes, sir, Every convenience that could be, was in the home.*

 \* \* \* \* \* \*

"Q. Have you been back to Illinois since you and your wife separated in March? A. No, sir." (Emphasis mine).

A witness, Duncan Campbell, called by the plaintiff, testified to several conversations with the plaintiff during which the latter expressed a desire to go into business in Alamogordo after the war was over. This portion of the testimony of the witness, Duncan, is quoted in the majority opinion. However, here as in the case of plaintiff as a witness, the majority fail to quote certain testimony bearing on the issue of residence and plaintiff's good faith in claiming it which, in my opinion, the trial judge was entitled to consider. It is as follows:

"Q. State your name, please. A. George Duncan Campbell.

"Q. Where do you reside? A. At 311 Fourteenth Street, Alamogordo, Otero County.

"Q. How long have you resided in Otero County, New Mexico? A. Approximately Two years—two years this month.

"Q. What business are you in? A. Men's Store.

"Q. And are you acquainted with Captain Byron D. Allen, the plaintiff in this case? A. I am.

"Q. How long have you known Captain Allen? A. He first started coming in the store about Christmas, 1945.

"Q. Were you acquainted with his wife at the time they were living here? A. Yes.

"Q. Where were they living? A. Along about Thirteenth Street—

"Q. *Since you have known Captain Allen—about Christmas of 1945—where has he been a resident?* A. *He lived here in town; his duties were at the Air Base—*

"Q. *Since 1945 continuously?* A. *Yes, sir, I know that for a fact.*" (Emphasis mine).

In my opinion, all of the testimony quoted herein, yet omitted by the majority and denied consideration in support of the trial court's finding of residence, is pertinent to that issue. Even if it be granted that portions thereof may not properly be so considered, how the following question and answer can be ignored in seeking support for the finding is inconceivable to me, to wit:

"Q. *At the time you established your residence in Otero County, in September, 1945, state whether or not the defendant was a resident here with you.* A. *She was.*" (Emphasis mine).

Can it be possible that the majority deny consideration because the question is leading? Surely not! And, yet, no other reason so obviously suggests itself. The majority offer no explanation of the reason for exclusion. If this be the reason, then, for the first time in its history, this court goes on record as saying it will sift from the bill of exceptions all evidence such as hearsay testimony, answers to leading questions and the like, which may have come into the record without objection through inadvertence or carelessness of counsel, yet might have been excluded upon proper objection, before testing the sufficiency of the evidence to support a finding. All reason for the alertness of counsel in keeping out objectionable evidence will disappear in the face of such a rule here for applying the substantial evidence test to findings.

Preliminary to a determination of the sufficiency of the evidence to support a finding of residence in plaintiff, the answer to a single question must be supplied. The question is: Can a person while on active duty in the United States Army change his residence? If he cannot, that ends the matter. Obviously, he can as the majority concede. But while professing to uphold the right of an army officer to change residence while a member of the armed services, the majority then proceed to apply a test for effecting the change which amounts to a denial of the right in practically every instance where the issue is raised. Of course, there is no legal impediment to such a change of residence. 19 C.J. 418; 28 C.J. S., Domicile, § 12, page 28; 17 Am.Jur. 634; Trigg v. Trigg, 226 Mo.App. 284, 41 S.W.2d 583. St. John v. St. John, 291 Ky. 363, 163 S.W.2d 820; see, also, annotation of subject in 106 A.L.R. 6(32), supplemented in 159 A.L.R. 496(507) and annotations in 148 A.L.R. 1413, as supplemented in 149 A.L.R. 1471, 150 A.L.R. 1468, 151

A.L.R. 1466, 152 A.L.R. 1471, 153 A.L.R. 1442, 153 A.L.R. 1466, 156 A.L.R. 1466.

The author of the text on the subject of Domicile in 17 Am.Jur. 634, concedes the right of a person in the armed services to effect a change of residence. He states: "A soldier residing at a government post on land ceded by a state to the government is not a resident of that state, although the grant by the state of the site of the post reserves the right to serve process from the courts of the state. On the other hand, if a person engaged in military service by animus and factum establishes a residence near but outside the military post, with the purpose of making such residence the home of himself and his wife, he may acquire a domicil in such place."

This Court in Klutts v. Jones, 21 N.M. 720, 158 P. 490, 492, L.R.A.1917A, 291, recognizes the question of whether a person is a resident of one place or another to be largely one of intention determinable by the trial court, stating: " * * * and, where the intention and the acts of the party are in accord with the fact of residence in a given place, there can be no doubt of the fact that such party is a bona fide resident of the place where he intends to and does reside." See, also, Fisher v. Terrell, 51 N.M. 427, 187 P.2d 387.

The facts in the case of St. John v. St. John, supra, decided by the Supreme Court of Kentucky are not unlike those in the case at bar. There an army officer, as here, was the plaintiff in a divorce suit. As an officer in the United States Army on active duty he first came into the state of Kentucky and was stationed at Fort Knox. Following marriage in November, 1940, he brought his wife to Kentucky and set up housekeeping at West Point, not far from Fort Knox. After dwelling at West Point for two months, the officer and his wife moved to the nearby town of Vine Grove where they resided until ordered to Fort Knox to reside on March 1, 1941. Having purchased furniture upon setting up housekeeping, the plaintiff stored same in Kentucky when ordered to Fort Knox.

In the St. John case, as here, the facts showed that the plaintiff claimed Kentucky as his home. Whereas, there the plaintiff and wife had maintained a household off the military reservation for only four months, here the plaintiff and wife had resided in a home provided by him off the military reservation for nearly two years. In the St. John case, where the facts are no stronger, if as strong as here, the court held [291 Ky. 363, 163 S.W.2d 823]: "The chancellor, in finding that appellant had not acquired a domicil in this state in effect ignored the direct and positive testimony as to intention and relied entirely on inferences at variance with this testimony. In the usual and ordinary case involving domicil, the one whose domicil is in question is not a witness and in-

ferences from proven facts and circumstances become all important but where, as here, the one whose domiciliary status is in question gives positive uncontradicted testimony as to his intention and the proven facts and justifiable inferences therefrom do not render such testimony incredible, it should be given due consideration and weight. We think there was nothing in the evidence to discredit appellant's testimony and that of the witness referred to and render such testimony unworthy of belief. This being true, the evidence undoubtedly established that appellant had acquired a domicil in Kentucky which, concurring with actual residence, was sufficient to entitle him to maintain the action since, as above indicated, his domicil or legal residence here was not terminated by his moving into the military reservation under army orders."

In City of Roswell v. Hall, 45 N.M. 116, 112, P.2d 505, in an opinion by Chief Justice Brice the test to be applied in this court for determining sufficiency of the evidence to sustain findings of the trial court was stated as follows: " * * * and in determining whether there is substantial evidence we will consider only that part of the evidence supporting the judgment, and reject the opposing or conflicting testimony." See, also, to the same effect, the cases of Dickerson v. Montoya, 44 N.M. 207, 100 P.2d 904; Williams v. Engler, 46 N.M. 454, 131 P.2d 267, and

Sundt v. Tobin Quarries, 50 N.M. 254, 175 P.2d 684, 169 A.L.R. 586.

An application of the foregoing test can only result in sustaining the finding of residence. The majority, as has been pointed out, have applied this test in reverse, at least, as to some of plaintiff's supporting testimony, by excluding it from consideration altogether.

In St. Clair v. St. Clair, 175 S.C. 83, 178 S.E. 493, the holding of the court on the question now considered is epitomized in the second syllabus, as follows: "Finding of trial judge is conclusive on question of residence of party to action, unless there is a total failure of testimony to support it."

Unless there is absolutely *no* testimony to support the finding of residence, this court is without right to review the evidence for determining its substantive character in support of the questioned finding. This is so because the question of sufficiency of the evidence to support the finding was not reserved below. Faced with a claim that there is *no* evidence to support a jurisdictional finding, we may examine the record sufficiently to ascertain whether the claim be true. Once the court finds *some* evidence tending to support the finding, its inquiry ends, the record book is closed and the judgment must stand affirmed without debating its substantial character. Whether it were so was a question for the district court, not the Supreme

Court, to determine. If the defendant had desired to raise that question here, she should have been present or represented at the trial and reserved it for review.

How it can be said there is *no evidence* tending to support the questioned finding is simply incomprehensible to me. The issue was the plaintiff's bona fide residence in Otero County. He testified that Alamogordo was his residence and had been for two years. He had resided with his family, off the military base, in a house maintained by him in the town of Alamogordo throughout that period. On several different occasions, over the period of two years, he had discussed with a business man of Alamogordo the prospects of getting into some business there when his army tour ended. And, yes, too, if one please, unless excluded as in the prevailing opinion, apparently, because the question is "leading", but contrary to the test to be applied as declared by this court in the cases cited, supra, the plaintiff had "established" residence in Otero County, "in September, 1945."

If this Court can reverse a trial judge on findings made at a default trial, with the support the questioned finding here has, and where there is no challenge to a single ruling nor the slightest semblance of compliance with requirements for preserving error for review, then the litigant "who fights and runs away," indeed does "live to fight another day." As already said,

such a litigant is placed in a better position to challenge error than the one whose counsel remains in the trial and merely overlooks preserving error for review.

The judgment of the trial court should be affirmed. The majority having determined otherwise, for the reasons heretofore stated, I dissent.