624 P.2d 26

**Kathleen A. HAGAN, Petitioner-Appellee,**

v.

**Edward B. HARDWICK,
Respondent-Appellant.**

**No. 13011.**

Supreme Court of New Mexico.

Jan. 12, 1981.

Atkinson & Kelsey, David H. Kelsey, Sandra Morgan Little, Albuquerque, for respondent-appellant.

Popejoy & Leach, John Silko, Albuquerque, for petitioner-appellee.

OPINION

NIEVES, District Judge.

The opinion of this Court filed November 17, 1980 is hereby withdrawn and the following substituted therefor.

Edward Hardwick appeals from the denial of his motion to set aside a final decree of dissolution of marriage and division of property and debts for lack of jurisdiction.

Hardwick raises two issues in this appeal: (1) whether the trial court had jurisdiction to dissolve the marriage under the provisions of Section 40-4-5, N.M.S.A. 1978; and (2) whether the trial court had jurisdiction to divide the property and debts of the parties.

The wife, Kathleen Hagan, concedes on appeal that the court did not have jurisdiction to divide the property and debts. We reverse as to that issue but affirm that the trial court had jurisdiction to dissolve the marriage.

The evidence shows that Kathleen Hagan had lived in New Mexico prior to moving to New Jersey and prior to her marriage to Hardwick. She moved from this state for educational purposes only, having enrolled at Princeton Seminary School, Princeton, New Jersey. She listed her parents' address at Tijeras, New Mexico, on the college's records as her permanent address, maintained her New Mexico teaching certificate, and registered to vote in New Mexico in 1973. She returned to the state to visit on college breaks and holidays. She has intended at all times to retain New Mexico as her home and has contacted several state firms concerning employment after her graduation. She was physically present in the state for thirty-four days prior to filing her petition for divorce.

Respondent Hardwick contends that these facts are insufficient as a matter of law to satisfy the jurisdictional requirements of Section 40–4–5, N.M.S.A. 1978. He contends that the statute's requirement that one party to the marriage must have resided in this state for six months immediately preceding the filing of the petition should be interpreted to require continuous physical presence in the state for six months prior to filing the petition.

■ The right to apply for or obtain a divorce is accorded by statute, and the state has the right to determine who may use its courts for that purpose and upon what conditions they may do so. *Allen v. Allen*, 52 N.M. 174, 194 P.2d 270 (1948).

The purpose of requiring domicile within the state for a specified period of time as a jurisdictional prerequisite to obtaining a divorce is "to prevent divorce-minded couples from shopping for favorable residence requirements." *Wallace v. Wallace*, 63 N.M. 414, 417, 320 P.2d 1020, 1022–23 (1958). The legitimate state interests in imposing such requirements were expanded upon by the United States Supreme Court in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In upholding Iowa's one year residency requirement for divorce actions, the Court observed that divorce proceedings affect marital rights, property rights, and often custody of children. The importance of these consequences is such that the state "may insist that one seeking to initiate such a proceeding have the modicum of attachment to the State required here." *Id.* at 407, 95 S.Ct. at 561. The Court further observed that "[s]uch a requirement additionally furthers the State's parallel interests both in avoiding officious intermeddling in matters in which another State has a paramount interest, and in minimizing the susceptibility of its own divorce decrees to collateral attack." *Id.* at 407, 95 S.Ct. at 561.

Section 40–4–5 provides that our courts have jurisdiction to dissolve marriages when "either party has resided in this state for at least six months immediately preceding the date of filing [the petition] and has

a domicile in New Mexico." This provision insures that one party to the marriage has at least a "modicum of attachment" (*Sosna v. Iowa, supra*) to the state and is not merely divorce forum shopping. New arrivals to the state must demonstrate their intention to remain in the state by establishing residence for at least six months before they are entitled to take advantage of the laws and the courts of the state for the purpose of obtaining a divorce.

■■ There is nothing in the terms of Section 40–4–5 indicating a legislative intent to require continuous physical presence within the state for six months prior to initiation of the proceedings. If the Legislature meant to require continuous physical presence within the state for six months, it could have incorporated those words into the statute. *Crownover v. Crownover*, 58 N.M. 597, 274 P.2d 127 (1954). Rather, the Legislature chose to require that one party to the marriage must have "resided" in this state for six months. "Residence" has been defined by this Court to be substantially synonymous with "domicile," *Allen v. Allen, supra*, and "domicile" within the state does not require physical presence, *Woollett v. Woollett*, 57 N.M. 550, 260 P.2d 913 (1953), but rather physical presence in the state at some time in the past, and concurrent intention to make the state one's home. *Worland v. Worland*, 89 N.M. 291, 551 P.2d 981 (1976).

■ Nor do the policies which Section 40–4–5 advances suggest that the Legislature intended to require continuous physical presence for the six-month period. Where an established resident moves out of state temporarily, for recreational, educational, or other purposes, that person undeniably, has an attachment to the state in his established residence here, his maintenance of a domicile here, and his intent to return to the state upon the cessation of his business elsewhere. As this Court stated in *Allen v. Allen, supra*, quoting from *Shilkret v. Helvering*, 138 F.2d 925, 927 (D.C.Cir.1943), much more than mere absence is required to effect a change in domicile:

[T]o effect a change from an old and established domicile to a new one, there must be . . . a fixed purpose to remain in the new location permanently or indefinitely. For domicile once acquired is presumed to continue until it is shown to have changed, and to show the change two things are indispensible,—"First, residence in the new locality; and, second, the intention to remain there. . . . Mere absence from a fixed home, however long continued, cannot work the change."

*Id.* 52 N.M. at 179, 194 P.2d at 273–74.

Kathleen Hagan satisfied the jurisdictional requirements of Section 40–4–5.

We affirm the district court on the issue of jurisdiction to grant the divorce. That portion of the final decree granting division of the property and debts is reversed.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, Senior Justice, concur.