738 P.2d 908

**Mary Sue FENNER, Petitioner-Appellee,**

v.

**Charles Arthur FENNER,**
**Respondent-Appellant,**

v.

**David Flinchbaugh, Intervenor.**

**No. 9180.**

Court of Appeals of New Mexico.

May 7, 1987.

Carl M. Sparks, Albuquerque, for respondent-appellant.

Roberta Beyer, Albuquerque, for petitioner-appellee.

## OPINION

BIVINS, Judge.

From a judgment and final decree dissolving the parties' marriage, dividing their property and debts, awarding lump sum alimony and attorney fees, holding husband in contempt and from an order appointing a special master to sell husband's separate real property in Florida, husband appeals. We affirm, except for the sale of the Florida real property.

Husband raises seven issues on appeal: whether the trial court (1) incorrectly declined to grant a continuance of the trial on the merits because husband was undergoing psychiatric treatment in another state; (2) lacked jurisdiction over the wife because she failed to establish a present, good faith intention to reside in New Mexico; (3) erred in refusing to dismiss for lack of jurisdiction due to two prior marriages of husband, neither of which was ever dissolved; (4) had jurisdiction to order the sale by a special master of real property located in Flor-

ida; (5) erred in refusing to grant a continuance after allowing an intervenor to intervene on the day of the trial; (6) erred in assigning income tax liability and business debts as husband's separate responsibility; and (7) abused its discretion in dividing property, assigning debts and awarding alimony. We discuss these issues under four categories: jurisdiction, continuances, Florida property and claimed trial error.

### FACTS

Husband and wife married in 1976. During the marriage they lived in Florida, Missouri, Arizona and New Mexico, where they acquired various property. Both parties worked until wife quit her job in 1983. During the marriage, husband earned substantially more than wife. Wife first filed for dissolution of marriage on June 10, 1985, in Cause No. DR–85–02349. At that time, she had resided in New Mexico only five months. Wife then amended the petition to ask for a legal separation. On July 10, 1985, after wife had resided in New Mexico for six months, she filed a new petition for dissolution of marriage in Cause No. DR–85–02816. The two causes were consolidated in July 1985.

On June 13, 1985, the trial court ordered interim relief to wife and ordered several banks to freeze certain accounts of the parties. Contrary to court order, husband left New Mexico sometime in June, taking with him over $50,000 in cash from the frozen accounts. The trial court entered an order to show cause and to account for the missing funds. Husband's only response was an affidavit in which he claimed to be married to Winefred Duffy Fenner at the time he married wife. Upon husband's failure to show cause, the trial court imposed a fine of $250 a day until the date of trial. By trial date, husband had accrued $16,000 in fines.

Two days before trial, David Flinchbaugh, an alleged business partner of husband, moved to intervene in the divorce trial, claiming husband owed him money. The trial court granted this intervention to determine "whether intervener's claim is a community or separate debt." The inter-

venor claimed that $35,000 of the frozen assets were business assets belonging to him. Intervenor is not a party to this appeal.

Husband did not appear at trial. His counsel claimed he was undergoing psychiatric treatment in California and produced a doctor's report to that effect. Counsel, however, failed to arrange a conference call with treating physicians as directed by the trial court. Because of husband's mental problems, counsel had moved for two continuances, which the trial court denied. Trial proceeded on the merits. At the time of divorce, wife was 62 years old and husband was 63 years old. Other facts relating to husband's issues will be discussed below.

## JURISDICTION

### Wife's Residency

NMSA 1978, Section 40–4–5 (Repl.1986) requires a party who seeks a divorce to reside in New Mexico for six months prior to filing for divorce and to have a domicile here. Domicile is shown by being physically present in the state and having a place of residence here, as well as by demonstrating a present, good faith intention to remain in the state permanently or indefinitely. § 40–4–5(A) and (B).

■ Although decided under former law, we agree with *Davey v. Davey*, 77 N.M. 303, 308, 422 P.2d 38, 42 (1967) that "[t]he residence requirement specified by the statute, although jurisdictional, presents a question of fact for determination by the trial court." We will not overturn such a finding if it is supported by substantial evidence. *Id.* The evidence shows that wife lived in New Mexico for six months by the time she filed her second petition for divorce. She opened bank accounts here, registered to vote, registered her car and lived here. Such acts demonstrate both her physical presence here and her concurrent intention to make New Mexico her home. *See Hagan v. Hardwick*, 95 N.M. 517, 624 P.2d 26 (1981). " '[T]o effect a change from an old and established domicile to a new one, there must be * * * a fixed purpose to remain in the new location permanently or indefinitely. For domicile

once acquired is presumed to continue until it is shown to have changed * * *.' " *Id.* at 519, 624 P.2d at 28 (quoting from *Shilkret v. Helvering*, 138 F.2d 925, 927 (D.C. Cir.1943)).

New Mexico appeared to be the current domicile of wife at the time of filing for divorce. Absent any evidence that she established a domicile in some other state when she filed her divorce action, we uphold the trial court's determination of jurisdiction over wife.

### Husband's Prior Marriages

■ Husband contends by two affidavits that he was married to two other women, neither of whom he ever divorced, at the time of his marriage to wife. One affidavit, filed August 14, 1985, alleges that husband was married to Winefred Duffy Fenner on the date that he married wife. The affidavit does not state whether husband divorced Winefred nor is there a copy of a marriage certificate included. The other affidavit, filed on February 11, 1986, along with husband's jurisdictional objection and response to petitioner's motion for an order regarding the sale of the Florida property, alleges that husband was married to Margret Rakes Hall Fenner on the date he married wife and that he and Margret never divorced. Included with this affidavit is a copy of a Mexican marriage certificate, dated July 23, 1958.

The general rule in New Mexico is that "[i]n a chain of marriages in which a marriage is claimed to be invalid because of the continued existence of a predecessor, the presumption of validity initially attaches to the later in point of time." *Panzer v. Panzer*, 87 N.M. 29, 32, 528 P.2d 888, 891 (1974). "The authorities which we consider to be sound require proof of the prior marriage plus the fact that it has not been terminated by death or divorce." *Id.* at 33, 528 P.2d at 892. The challenging party must prove these facts by clear and convincing evidence. *Id.*

In our case, husband failed to prove even the existence of his marriage to Winefred, much less that the marriage was not dissolved by death or divorce. Other than his

self-serving affidavit, husband offered no proof of his marriage to Winefred. The trial court "does not act arbitrarily in disregarding alleged uncontradicted testimony where legitimate inferences may be drawn from the facts and circumstances that contradict or cast reasonable doubt on the truth or accuracy of the testimony." *Alfieri v. Alfieri*, 105 N.M. 373, 733 P.2d 4, 9 (Ct.App.1987). " '[T]he interest of the witness furnishes a proper ground for hesitating to accept his statements[.]' " *Id.* (quoting from *Strickland v. Roosevelt County Rural Elec. Coop.*, 94 N.M. 459, 465, 612 P.2d 689, 695 (Ct.App.1980), emphasis omitted). Given that husband presented evidence of one prior marriage, then six months later presented evidence of a second prior marriage, the trial court could have questioned husband's credibility. Absent any clear and convincing evidence of the marriage to Winefred, the trial court correctly rejected husband's claim of this marriage.

As to Margret, while husband may have shown, through an uncertified marriage license, that this marriage existed, he offered no clear and convincing proof that it was not terminated by death or divorce. *See Allen v. Allen*, 98 N.M. 652, 651 P.2d 1296 (1982). The trial court also correctly rejected husband's claim of the marriage to Margret.

## CONTINUANCES

### Trial

■ The record reflects that husband moved for two continuances, on September 11, 1985, and again on October 18, 1985. The basis of both motions was that husband was undergoing psychiatric treatment in California and was unable to prepare properly for the pending trial. On the day of trial, October 31, 1985, husband did not appear personally, but was represented by counsel. We assume that husband renewed this motion on the day of trial, although husband provides no references of this fact. At trial, husband's attorney presented a copy of a psychiatric report regarding husband. The report indicated that husband was discharged from the Veterans' Hospital in Long Beach, California,

on October 25, 1985, and would be allowed to return to work on November 4, 1985, three days after trial ended. Although the trial court, before trial, directed a conference call with husband's doctors, counsel was unable to find any doctors who would participate. The trial court refused to grant a continuance.

The trial court may grant a continuance at its own discretion. *Gonzales v. Gonzales*, 85 N.M. 67, 509 P.2d 259 (1973). We will overturn only upon a showing of an abuse of that discretion. *Id.* The record indicates that husband could have appeared at trial and that he was not so mentally incompetent as to be unable to assist with his case. He was diagnosed as having "passive-aggressive behavior" and an "adjustment disorder." No doctor's affidavits or testimony indicated that this diagnosis would prevent husband from appearing, participating in the hearing or understanding the nature of the proceedings. The record also indicates that husband transacted business with the intervenor in California during the time of his treatment. For example, the trial court found that husband and intervenor discussed their partnership business and other business at least on a weekly basis since August 30, 1985, and met in California on September 25, 1985, to discuss business.

At a hearing on February 11, 1986, where husband's counsel presented the second affidavit of husband regarding another marriage, the trial judge said:

I want to state this on the record: * * * to be quite honest with you, I think Mr. Fenner is making a mockery of this court. * * * I'm not going to hear any more motions by him or testimony by affidavit or otherwise by him and will consider him to be in total default until he does the following: he indicates that he is willing to personally appear here and account to this court for the money that he took out of this jurisdiction in violation of a court order and answer to this court for the fines for contempt that have been imposed on him. So far he's done absolutely nothing to account to this court or to make an effort to personally appear or

to answer to the fines that have been imposed by this court for disobeying the court order and taking property * * *. And the only way he can overcome that is a doctor's statement by a psychiatrist or medical doctor that indicates that due to the physical or psychological reasons, he is totally unable to participate * * *.

We agree with the trial judge that husband had ample opportunity to avail himself of the resources of the court. This he willfully failed to do. Husband cannot now be heard to complain of any unfairness to him by the trial court. His failure to appear and defend himself can only be attributed to his own voluntary actions, and he must suffer the consequences of those actions. *See Gonzales v. Gonzales.* The trial court did not abuse its discretion in refusing to grant husband a continuance.

### Intervenor

■ Husband also contends that he requested a continuance after the trial court allowed the intervenor to intervene on the day of trial. Husband stated he had no objection and agreed to the intervention, but sought a continuance to investigate and respond to intervenor's claim. Husband's counsel cites no transcript references or case authority for this issue in either his brief-in-chief or reply brief. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984) (issues raised in appellate briefs that are unsupported by cited authority need not be reviewed on appeal).

■ Further, as we understand the record, the trial court allowed the intervention only to determine whether the claim was a separate or community debt. The merits of intervenor's claim were to be determined at a later date. As noted above, the granting of a continuance is within the discretion of the trial court. *Gonzales v. Gonzales.* Absent an abuse of discretion, we will not disturb the trial court's ruling. In this case, even if counsel had provided us with authority for his argument, we would have found no abuse of discretion by the trial court.

### FLORIDA PROPERTY

Husband owns real property located in Florida that was acquired before his marriage to wife. The trial court ordered husband to list this property for sale. When husband refused to sign the necessary documents, the trial court appointed a special master to act in husband's stead. Husband contends that the trial court's appointment of the special master was in error. We agree.

It is a well-settled rule that a court may not directly affect title to out-of-state property. *Fall v. Eastin,* 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909); *Willis v. Willis,* 104 N.M. 233, 719 P.2d 811 (1986); *see also* Annotation, *Power of Divorce Court to Deal With Real Property Located in Another State,* 34 A.L.R.3d 962 (1970). A court may, however, indirectly affect title to land in an *in personam* proceeding. *Fall v. Eastin; Willis v. Willis.* In doing so, it may determine whether property is community or separate. *Willis v. Willis.* A court may also order a party to convey land in another state and it may enforce that decree by process against the owner. *Fall v. Eastin.* What the court may not do is appoint someone other than the owner to convey that land. For in so doing, it would be allowing the special master to pass the land, thus directly affecting title. A court has "no jurisdiction to transfer the title to such lands by a sale and conveyance made through its master or commissioner." *Stewart Oil Co. v. Sohio Petroleum Co.,* 185 F.Supp. 765, 767 (E.D.Ill.1960).

■ Here it appears undisputed that the trial court had personal jurisdiction over husband. The trial court found husband was properly served with summons and a copy of the petition. Either husband or his attorney was personally served with copies of all motions in this case. Husband was represented by counsel at the numerous hearings and at the trial on the merits. Where the trial court has *in personam* jurisdiction of the parties, as it did here, the trial court may determine the equities in the out-of-state real estate and order parties to act, or refrain from acting, with regard to the property. *Carpenter v. Car-*

*penter,* 645 P.2d 476 (Okla.1982). Once husband refuses to act, however, the trial court cannot allow another to pass title, thereby divesting the owner of title. *Kane v. Kane,* 577 P.2d 172 (Wyo.1978). The trial court may find husband in contempt for refusing to obey the order to sell the property. *See Hudson v. Hudson,* 494 So.2d 664 (Ala.Civ.App.1986).

█ Wife is not without recourse, however, for she can look to the Florida courts to enforce her judgment against husband. "If the court has entered a decree of specific performance, but the conveyance has not been executed, the majority of states * * * will give effect to the decree." *Rozan v. Rozan,* 49 Cal.2d 322, 330, 317 P.2d 11, 15 (Cal.1957) (en banc).

█ The trial court erred in relying on SCRA 1986, 1–070 to appoint a special master to act for husband. Rule 1–070 was not designed to affect jurisdiction and generally operates only as to land within the jurisdiction of the court. 7 Pt. 2 J. Moore, J. Lucas & K. Sinclair, Jr., *Moore's Federal Practice* ¶¶ 70.02 and –.03 (2d ed. 1986). We must, therefore, reverse the trial court on its appointment of the special master in this case for the sale of the Florida property.

## CLAIMED TRIAL ERROR

### Debts

█ Husband contends that the trial court erred in assigning income tax liability and intervenor's claim as his separate debts. Husband's counsel provides no transcript references or case authority for his argument. Counsel cannot baldly assert that we reverse the trial court "as a matter of fundamental fairness, due process, and equal protection" without providing discussion or authority. Although the trial court, upon dissolution of a marriage, has a duty to determine whether debts and obligations incurred by the parties during coverture are community or separate debts, husband has failed to demonstrate on appeal that the trial court's ruling was unsupported by substantial evidence, nor has husband shown that he requested a finding of fact on this issue. *See* NMSA 1978,

§ 40–3–9(A) (Repl.1986). Wife's counsel also fails to provide authority for the merits of her discussion on this issue. Under these circumstances, the trial court's findings will not be disturbed. *Gonzales v. Gonzales; In re Adoption of Doe.* We note that our decision may not preclude the Internal Revenue Service from a different determination of wife's income tax liability for the years in which the parties failed to file a return.

### Property Division and Alimony Award

█ Husband finally contends that the trial court erred in its distribution of property and award of alimony. We have reviewed husband's requested findings of fact and have determined that he wholly failed to request any specific findings on these issues. "A party will waive specific findings of fact and conclusions of law if he fails to make a general request therefor in writing, or *if he fails to tender specific findings and conclusions.*" SCRA 1986, 1–052(B)(1)(f) (emphasis added); *Wagner Land & Inv. Co. v. Halderman,* 83 N.M. 628, 495 P.2d 1075 (1972). Failure to tender specific findings waives review of the findings on appeal. *McNabb v. Warren,* 83 N.M. 247, 490 P.2d 964 (1971).

Even if husband had tendered specific findings, he does not appear to challenge the findings based on lack of substantial evidence. Rather, he appears to urge another result. "The test to be applied on appeal is whether there is substantial evidence to support the trial court's ruling, not whether there is evidence to support a different result." *Alfieri v. Alfieri,* 105 N.M. at 377–78, 733 P.2d at 8–9. Because husband failed to request specific findings, we will not review the trial court's decision on these issues.

In closing, we caution husband's counsel regarding violations of our appellate rules. Husband provided no citations to the parts of the record and transcript he relied on, a violation of SCRA 1986, 12–213(A)(1)(c) and (A)(2). Technically, we have no duty to entertain any of husband's contentions on appeal due to this procedural violation. *See Bilbao v. Bilbao,* 102 N.M. 406, 696

P.2d 494 (Ct.App.1985). Husband's counsel also failed to provide case authority for several of his issues, a violation of Rule 12–213(A)(3). We remind counsel that we are not required to do his research. *In re Adoption of Doe.* We will not review issues raised in appellate briefs and unsupported by cited authority. *Id.* As in *Bilbao,* counsel would be well advised to read and follow the appellate rules to avoid future violations.

We reverse the trial court's appointment of a special master, and we affirm on all other issues. Husband shall pay the costs of his appeal, but we award no additional attorney fees to wife.

IT IS SO ORDERED.

DONNELLY, C.J., and GARCIA, J., concur.